BANK OF CEDAR BLUFFS V. FRANK LEGRAND ET AL.: N. O. WALTHER, TRUSTEE, INTERVENER, APPELLANT: GERTRUDE LEGRAND, APPELLEE.

FILED MAY 22, 1934. No. 28947.

*Hendricks & Kokjer,* for appellant.

*William Niklaus, H. A. Bryant* and *J. E. Mockett, contra.*

Heard before GOSS, C. J., GOOD, EBERLY and PAINE, JJ., and REDICK, District Judge.

REDICK, District Judge.

This action was originally brought by the Bank of Cedar Bluffs against Frank LeGrand as an action at law upon four promissory notes aggregating $3,478.65. The petition was filed February 28, 1931. March 6, 1931, plaintiff was given leave to file an amended petition and make additional defendants. The amendment was made in a most irregular manner by withdrawing some of the pages of the original petition and inserting others containing the matter of the amendment. The original petition, therefore, is not contained in the record. At the commencement of the action an affidavit for attachment was filed alleging that the defendant had and was about to transfer his property with intent to defraud his creditors. As some of the notes were not due, the court granted leave to issue the attachment. The writ was issued but does not appear to have been levied upon any property. The amended petition was filed March 6, 1931, in the nature of a creditors' bill and naming as additional defendants Gertrude LeGrand, wife of Frank, and Iva E. Welch, sister of Gertrude, charging that the three defendants had conspired together for the purpose of defrauding the creditors of Frank Le-Grand, and especially the plaintiff, and had caused to be placed in the possession of Iva E. Welch the sum of $4,000, the proceeds of certain hogs and cattle belonging to Frank LeGrand and sold on the Omaha market; that said fund was deposited in the United States National Bank of Omaha in the name of Iva E. Welch. The petition prayed for an accounting of the amount due on plaintiff's notes and for an injunction against the defendants transferring or disposing of said fund. On the same day an order was issued and served upon the United States National Bank and Iva E. Welch in Douglas county, restraining them from transferring or disposing of the fund. By some means which plaintiff claims were fraudulent, Iva E.

Welch was induced to sign an answer in the case whereby she disclaimed all interest in the fund in the bank and expressed a willingness to pay it into court. On March 10 this answer was filed and the court ordered the money paid to the clerk of the district court for Saunders county to await the further order of the court, which was done. The title to this fund presents the only question for review.

March 13, 1931, Frank LeGrand, on his voluntary petition, was adjudged a bankrupt by the district court of the United States sitting at Lincoln, Nebraska, and N. O. Walther, who was the president of the Bank of Cedar Bluffs, was elected trustee. March 27, 1931, the claim of the plaintiff bank was allowed in the bankruptcy proceedings.

April 1, 1931, Gertrude LeGrand filed an answer claiming that her husband, Frank, was indebted to her for money loaned, in excess of $6,000, and that the hogs and cattle from the sale of which the fund in question resulted were turned over to her in part payment of such indebtedness. April 28, 1931, Walther, trustee in bankruptcy, was ordered by the referee to intervene in this case, and on October 12, 1931, a petition of intervention was filed attacking the transaction between Frank LeGrand and his wife as fraudulent against the creditors of the bankrupt, and prayed that the funds in court be declared the property of the bankrupt and turned over to the trustee for the benefit of all his creditors.

Three amended answers were filed by Gertrude LeGrand; the first, December 14, 1931, the second, January 9, 1932, and the third, September 7, 1932. These answers are substantially alike, and abandon the defense set up in the original answer, that the funds in question constituted a payment upon the indebtedness of her husband to her, and in substitution therefor alleged in substance that from January 1, 1901, to March 1, 1931, she and her husband were engaged in the occupation of farming and stock-raising, and that about 1907 she received a legacy from the

estate of one Richard Williams in the sum of about $2,300, and in 1916 the further sum of $135 from the estate of an aunt, which money was her separate property; that said money was used in purchasing a farm in North Dakota and the necessary live stock and equipment, and that it was agreed between herself and husband that they would be joint owners of said property and all property thereafter acquired or purchased with said property or the increase thereof or proceeds of the sale thereof and the profits of the joint business; that this farm was sold in 1909 and proceeds invested in a Saunders county farm which was in turn sold and proceeds invested in live stock and farm equipment. She further alleged that for the purpose of protecting her property right, on February 25, 1931, she took possession of said stock and sold it at Omaha for $1,901.13; that some time prior to February 26, 1931, the corn on the farm had been sold and a check in payment therefor in the sum of $2,851.25 had been issued to Frank LeGrand, who was about to convert it to his own use; that she procured the check, cashed it and deposited it with the proceeds of the sale of stock in the United States National Bank at Omaha to the extent of $4,000, for safe-keeping, and she claims the fund belongs to her and prays its return. The intervener replied and denied all allegations of the answer and alleged that Gertrude was estopped to claim any part of the fund as against the trustee in bankruptcy.

The action having been placed upon the equity docket by the clerk, on December 19, 1931, on motion of Gertrude LeGrand, it was transferred to the law docket; thereafter two motions by the intervener to transfer the case to the equity docket were overruled, and the case came on for trial to a jury January 12, 1932, but a juror was withdrawn and cause continued and was finally tried to a jury March 1, 1933, which resulted in a verdict finding that Gertrude LeGrand was the owner of and entitled to $2,000 of the fund and the trustee in bankruptcy $2,000 thereof. The intervener filed a motion for new trial, which

was overruled, judgment rendered in accordance with the verdict, and the intervener, as trustee in bankruptcy of the estate of Frank LeGrand, appeals. Gertrude LeGrand files a cross-appeal complaining of that part of the judgment awarding to the trustee a one-half interest in the fund.

The procedure in this case was somewhat unusual. It originated as a simple action at law, but the amended petition of the plaintiff seeking to set aside the transfer of the property, the sale of which resulted in the production of the fund in court, on the ground of fraud, presented questions cognizable only in a court of equity. Doubtless the amended petition disclosed that the plaintiff, not having reduced its claim to judgment, was not entitled to question the transaction between Frank LeGrand and his wife, but Gertrude, by her first answer, sought to justify the transfer as a payment to her upon the indebtedness of her husband. Thereafter, the petition of intervention of the trustee in bankruptcy presented matters of equitable cognizance, and the amended answers of Gertrude set up an equitable defense, and on these pleadings neither party was entitled to a jury trial as a matter of right, though the district court had the privilege of taking the advice of a jury on the questions of fact. Upon the adjudication in bankruptcy of Frank LeGrand the case of the plaintiff abated and therefore the case should have been tried as one in equity between the trustee in bankruptcy, on the one hand, and Gertrude LeGrand, on the other. We will, therefore, consider this appeal as in equity and try it *de novo*.

From the confusion of the pleadings and proceedings in the district court we extract the one proposition necessary for the determination of the rights of the parties. The intervener claims that the transfer of the fund in question by Frank LeGrand to his wife was fraudulent as against the creditors of the bankrupt; Gertrude LeGrand claims that the fund belongs to her as the result of a joint adventure with her husband.

The burden of proving fraud is upon him who asserts

it, but in this case, involving a transfer from an insolvent husband to his wife, the consequence of which is to prevent creditors recovering their debts, there is a presumption of fraud which makes it incumbent upon the wife to produce sufficient evidence to overcome it; furthermore, the transfer in this case having been made within four months of the adjudication in bankruptcy, so far as the same may be founded upon the payment by the husband of a debt to his wife, was void as an unlawful preference. The only defense, therefore, to the claim of the trustee is that of joint adventure.

To prove a joint adventure Gertrude LeGrand presented herself as a witness, and the trustee objected to her competency, being the wife of the bankrupt, under section 20-1203, Comp. St. 1929, which declares that "The husband can in no case be a witness against the wife, nor the wife against the husband, except in a criminal proceeding," etc., citing *Stalcup v. Jepsen,* 118 Neb. 240. In that case it was held: "In proceedings in aid of execution upon a judgment against the husband, the wife is an incompetent witness for the judgment creditor for the purpose of showing that she has in her possession and control money or property of the husband which should be applied upon the judgment." Also, "In such case, the wife's attitude as a witness for the judgment creditor would be antagonistic to the husband, and therefore 'against' him within the meaning of that term as used in the statute prohibiting husband or wife from being a witness, one against the other." Also, *Niland v. Kalish,* 37 Neb. 47; *Weckerly v. Taylor,* 74 Neb. 772. These last two cases were creditors' bills seeking to set aside transfers from one spouse to the other as in fraud of creditors, and in all three cases the husband or the wife was called as a witness by the creditor and it was held that the witness was incompetent to testify over the objection of the other spouse. In the present case Frank LeGrand made no appearance as a party or witness or objection to his wife testifying. The true test of competency, however, is whether or not the testi-

mony of the wife is "against the husband" or *vice versa*. If the contest here were between the husband and the wife as to the ownership of the fund in question, undoubtedly neither one would be a competent witness against the other. *Reed v. Reed,* 70 Neb. 775. In the present case the trustee represents not only the creditors but the bankrupt himself, and the effect of the evidence offered by the wife as a witness would be to transfer the ownership of the fund in question from her husband to herself, and to that extent her attitude would be antagonistic to her husband. Frank LeGrand listed the personal property for taxation as his own; listed it in his property statement to the Bank of Cedar Bluffs as a basis for credit June 12, 1930; listed the $4,000 fund in suit in his schedule of assets in the bankruptcy proceeding, and so far as the evidence shows is claiming it against his wife. The statute contains no qualification of the declared incompetency of husband and wife as dependent upon the objection of one or the other, but is based upon considerations of a broad public policy intended to preserve from disruption the hoped-for amicable relations between husband and wife, marriage being considered one of the most important institutions of our civilization. In *Knickerbocker v. Worthing,* 138 Mich. 224, it was held that, under a statute making the husband and wife incompetent as a witness in any action or proceeding instituted by husband or wife in consequence of adultery, the consent of one spouse did not render the other a competent witness. The incompetency of one spouse cannot be removed by the consent of the other. *Barber v. People,* 203 Ill. 543; *Dwelly v. Dwelly,* 46 Me. 377. We are of the opinion that the competency of the witness is not dependent upon the accident as to which party calls her, but rather upon the purpose to be subserved by the evidence, and if the object is to defeat some property right of the other spouse, the position of the witness is antagonistic and the statute declares her incompetent. Where the husband disclaimed all interest in the property claimed by the wife in a creditor's proceed-

ing, it was held the wife was a competent witness, her attitude not being antagonistic to her husband. *Norbeck v. Davis,* 157 Pa. St. 399. We do not decide the point.

Regardless, however, of the question just discussed and giving due consideration to the testimony of Gertrude LeGrand and other evidence offered on her behalf, we think it is entirely insufficient to establish a contract of joint adventure between herself and her husband. Her entire testimony on this point is as follows: "Q. At the time this money was received by you and put into this business, did you have any talk with your husband about it? A. Yes, sir. Q. You may state the substance of that conversation. A. I was to get that out of the property or properties that we had, to get my money back. Q. And you knew he couldn't pay his entire indebtedness out of the property he had on hand? A. Well, I wanted my money. (Question repeated.) A. Not and pay what he owed me. Q. Had he ever paid you any interest? A. No. Q. You were not to bear any of the loss that occurred, were you? A. I didn't intend to. I wanted my money. Q. And there was no agreement about that? A. Never was brought up."

Floyd LeGrand, a son, testified that in 1926 he overheard a conversation between one Williams and Frank LeGrand in which Williams asked what had become of his (the witness) mother's estate, and his father said: "We put it in farm equipment." "That my mother was part owner." Gertrude further testified that they bought the North Dakota farm with her money and $2,000 or $3,000 that Frank had; the farm, 320 acres, was bought for $28 an acre, not all paid for, and after living there a year they sold it for $52 an acre, having built a house for $1,600, and barn, and bought stock and equipment for about $2,000. When they sold out they returned to Saunders county and bought 160 acres at $150 an acre, but were unable to complete payment and let it go back; they then rented and continued farming until March, 1931. The farming operations, purchase and sale of cattle, sale of farm products, except butter and eggs, were all done by and in

the name of Frank LeGrand; Gertrude took no part in the management and is unable to give any details regarding operations, left it all to Frank. The fund in question was the final result of these operations, contributed to by money borrowed of the Bank of Cedar Bluffs and other credits. We think the picture presented by the evidence is the ordinary one of husband and wife pooling their assets for the common advantage, but presenting no prospect, in legal contemplation, of a partnership or joint adventure. It may be that as between Frank or his heirs and Gertrude a trust would result or be implied, to the extent of her contributions, in any property to which they could be traced; but that is not claimed, and would be ineffectual as against creditors who dealt with Frank upon the credit of his apparent ownership, as clearly appears.

A joint adventure is in the nature of a partnership and exists when two or more persons contribute cash, labor or property to a common fund with the intention of entering into some business or transaction for the purpose of making a profit to be shared in proportion to the respective contributions. There is no evidence in this case of any agreement that the profits of the farming and stock-raising business should be divided between the husband and the wife, and Gertrude LeGrand herself testifies that the question of losses was not brought up, and that all she was to get was her money back. "A 'joint adventure' is defined as an association of two or more persons to carry out a a single business enterprise for profit." *Keiswetter v. Rubenstein*, 235 Mich. 36. "To constitute a partnership, or joint adventure at common law, there must be an agreement to share in profits and losses." *Columbian Laundry v. Hencken*, 196 N. Y. Supp. 523. Appellee cites a number of cases that "If the person receiving the money assumes no obligation for its return and it is subject to the risks of the business the parties have usually been held to be joint adventurers." *Inter alia, Buford v. Lewis*, 87 Ark. 412, *Nelson v. Lindsey*, 179 Ia. 862, and *Irvine v. Campbell*, 121 Minn. 192. But in all of them there was proof of an agreement to share profits.

Appellee contends that the trustee in bankruptcy has no standing to attack the transfer as fraudulent, for the reason that at the time of the commencement of the suit the claim of the Bank of Cedar Bluffs had not been reduced to judgment. This leaves out of view the fact that at the time the petition of intervention was filed the claim of the bank had been allowed in the bankruptcy proceedings, and it would seem that, if a judgment were necessary, the requirement was fulfilled. However, by the bankruptcy act the trustee upon his appointment became vested by operation of law with the title of the bankrupt, as of the date of the adjudication, to all property transferred by him in fraud of his creditors. 30 U. S. St. at Large, 565, ch. 541, sec. 70 (a). And such trustee, "as to all property not in the custody of the bankruptcy court, shall be deemed vested with all the rights, remedies, and powers of a judgment creditor holding an execution duly returned unsatisfied." 36 U. S. St. at Large, 840, ch. 412, sec. 8. It would seem from these provisions that the trustee in bankruptcy may attack fraudulent transfers without the claims of creditors having been reduced to judgment.

An objection is made that this appeal should be dismissed because the Bank of Cedar Bluffs is not named as a party. This is not well taken for two reasons: (1) The suit by the bank was abated by the adjudication in bankruptcy. (2) The trustee in bankruptcy represents the bank as one of the creditors of the bankrupt.

The judgment of the district court is reversed and cause remanded, with instructions to render decree in favor of intervener for fund in court.

REVERSED.