FRED DABELSTEIN, APPELLANT, V. CITY OF OMAHA ET AL., APPELLEES.

273 N. W. 43

FILED APRIL 30, 1937. No. 29839.

*Reed, Ramacciotti & Robinson* and *Albert F. Wahl,* for appellant.

*Seymour L. Smith, Harold C. Linahan, W. W. Wenstrand, A. C. R. Swenson* and *Kennedy, Holland, De Lacy & Svoboda, contra.*

Heard before ROSE, DAY and PAINE, JJ., and TEWELL, CHAPPELL and YEAGER, District Judges.

TEWELL, District Judge.

This action was brought to recover damages arising from personal injuries and alleged to have been proximately caused by negligence on the part of servants of both the defendants. At the close of plaintiff's evidence the court discharged the jury and rendered a judgment of dismissal of the plaintiff's action in favor of both defendants. The plaintiff appeals.

One question presented is that of whether or not the evidence introduced required the submission of the case to the jury. The answer to this question necessitates a minute examination of the evidence. The rule to the effect that the evidence must be given that reasonable construction that is most favorable to such a submission to the jury must be kept in mind. This rule is so well established that it need not again be declared. *LaFleur v. Poesch,* 126 Neb. 263, 252 N. W. 902.

The evidence discloses that the plaintiff, at the time of his injury, was employed by the civil works administration, which was an organization set up by the United States to furnish work for persons otherwise unemployed. He drew wages only from the United States. The plaintiff and about 300 other C. W. A. workers were engaged in repairing the street of the defendant city and the street railway track of the defendant company at a point between Forty-second street and Thirty-third street on Q street in the city of Omaha. The plaintiff was one of a gang of about 25 workers, one of whom was the foreman of that gang. To repair the railway track the rails were raised by jacks

to a position about 20 inches above the surface of the street. They were held in such raised position by piles of brick that were placed under each rail about 15 feet apart. These bricks were taken from the street adjacent to the track. From long use the edges of one side of each brick had become worn and caused each brick, in the language of some of the witnesses, to be "shaped like a loaf of bread." No tie rods to fasten one rail to the other were used and the wooden ties beneath the rails were so rotted as not to form such a tie. Just prior to the time the plaintiff received his injuries, these rails were raised and resting on piles of brick for a distance of at least two blocks. In making these repairs the workers began about Forty-first street and advanced eastward on Q street. Near the east end of the advance some men jacked up the rails. Just west of those who raised the rails other men broke the concrete pavement into chunks. Immediately west of those who broke the concrete were men, of whom the plaintiff was one, who were engaged in shoveling the broken concrete from between the rails to a position on either side of the railway track. A large number of the workers were engaged in making the repair at various points west of the plaintiff's position. On the afternoon of December 20, 1933, while the plaintiff was standing between the two rails of the track and facing southward, the south rail of the track fell from the piles of brick upon which it had rested. This rail fell toward the north to the ground level upon which the plaintiff was standing, upon its side and with its top pointing northward. It fell upon the instep of the plaintiff's right foot and produced the injuries for which damages are sought. The evidence is conclusive to the effect that the fall of this rail began near Forty-first street and advanced eastward toward the plaintiff. The C. W. A. officials had an office near the project at which the C. W. A. workers reported for work assignments each morning. A timekeeper and a man to render first aid in case of injury were at this office. Both of these were employees of the United States. The plaintiff testified that he saw some of the workers

being brought to work in a truck belonging to the defend-. ant company, and that in his opinion some of the workers were not employed by the C. W. A. The evidence shows that some of the tools used by the workers bore a mark that indicated ownership by the defendant city and some a mark that indicated ownership by the defendant company. The agreement or arrangement between the United States and the defendants under which this project was undertaken is not shown by the evidence. Anything from which its nature might be inferred, aside from the nature of the work, cannot be gleaned from the evidence. There is no evidence of the rail that fell having been as much as touched by any one just before its fall, except that one might infer that the men using the jacks a block east of where plaintiff stood were raising that rail. One Mr. Wadum, an employee of the defendant company, was occasionally around this Q street project. He furnished the men a stick to measure the depth and width of the excavation that was necessary beneath the rails to accommodate the new ties beneath the rails and to cause the rails to be of the proper grade when relaid. He is not shown to have given any other type of orders or directions. The men were directed only by their foremen. One or two servants of the defendant city were at times seen about the project, but are not shown to have given any directions as to how, when, or where any man should work.

The plaintiff contends that he was a mere invitee, and not an employee, of the defendants, and that the defendants were guilty of negligence proximately causing his injuries in furnishing him an unsafe place to work without warning him of the danger arising from the failure to use tie rods between the two rails of the track. The defendants contend that no negligence on the part of the servants of either of them is shown, and that, even if it were, the plaintiff would occupy the position of a special employee of the defendants and thus be restricted in his right of recovery to the provisions of the workmen's compensation act, assuming that the defendants exercised the right of

control of the plaintiff to the extent that the plaintiff alleges. To support the contention that the plaintiff could have been a general employee of the United States and at the same time a special employee of the defendants and therefore entitled to compensation from either of his employers, but restricted to such right of recovery, the defendants cite among others the following authorities: 1 Schneider, Workmen's Compensation Law (2d ed.) sec. 24; 28 R. C. L. 764, sec. 58; *Spodick v. Nash Motors Co.*, 203 Wis. 211, 232 N. W. 870; Annotation in 58 A. L. R. 1467; 39 C. J. 36. The record shows that the plaintiff is receiving compensation from the United States under the provisions of the federal compensation act.

To regard the plaintiff as an invitee on the premises of the defendants, which is the status he claims to have occupied, is, perhaps, to regard him in a status most favorable to his recovery. What was the immediate cause of the rail's fall cannot be told from the evidence. The immediate cause, as distinguished from the proximate cause, may reasonably have been the act of some one of the plaintiff's coinvitees prying upon it at any point in its raised position, or reasonably may have been that it slipped from the rounded surface of the bricks upon which it was raised, or reasonably may have been any one of several other causes. Tied at both ends to portions of the track that were not raised, a condition not shown by the evidence, and being of rigid steel construction, it could not have fallen if it had been tied to the north rail by a tie that was sufficient to prevent either rail from turning upon its side without one rail being elevated the width of the track above the other. Let us for brevity and clarity assume that the failure to use such a tie was an act of negligence that proximately caused the plaintiff's injuries, and that all other reasonably possible immediate causes came about in a sequence of events that reasonably could have been anticipated to follow such failure. Whose servants committed this act of failure? The evidence does not show that the defendants or any of the servants of either of them had anything to

do with the manner in which this work was accomplished. With the evidence affirmatively showing the plaintiff and his coinvitees as employees of the government taking orders only from their foremen, and failing to show that such foremen were directed by any one, we cannot assume that the failure to tie the rails together came about on account of any act or omission of the defendants merely because the work was done upon their premises. A more reasonable assumption would be that the defendants were in the position of contractees and the United States in that of a contractor. A contractee cannot be held liable in an action for damages for personal injuries arising wholly from an act of negligence on the part of one who is only an employee of the contractor. Annotation 44 A. L. R. 932, and cases cited under section 3, p. 945.

It is contended by the plaintiff that he had been a farmer all his life, was not acquainted with the danger connected with raising rails of a railway track, and that the defendants were guilty of negligence in not warning him of such danger. It is not to be presumed that the civil works administration and its various foremen who had charge of raising the rails were uninformed as to such dangers. Furthermore, the danger was one apparent to any normal adult person. The defendants furnished the plaintiff and his coinvitees a safe place to work, namely a clear street, so far as latent dangers were concerned. The evidence will not support a finding to the effect that the place furnished was the street after the rails had been raised. If the defendants were shown affirmatively to have told the plaintiff's coinvitees who had charge of raising the rail that tie rods were not necessary to safety, a condition of concurrent negligence might be involved, if sufficient lack of knowledge on the part of such coinvitees existed to the knowledge of the defendants. No such condition is shown in the record and no set of facts calling for an application of the doctrine of concurrent negligence is shown in the record. The duty of a contractee to keep premises safe for a servant of the contractor who enters thereupon as an

invitee extends only to then existing dangers of which such invitee reasonably is not aware. 45 C. J. 837; 20 R. C. L. 55, sec. 51.

Since the evidence is insufficient to bear a construction to the effect that the plaintiff was an employee of any kind of the defendants, it is not necessary to decide the question of whether or not the provisions of the workmen's compensation act would bar the maintenance of this action if the plaintiff was merely a special employee of the defendants.

Finding no error in the record prejudicial to the rights of the plaintiff, the judgment of the trial court is

AFFIRMED.