GEORGE E. WILLIAMS, APPELLANT, V. CITY OF WYMORE, APPELLEE.

292 N. W. 726

FILED JUNE 14, 1940. No. 30924.

*Hubka & Hubka,* for appellant.

*P. M. Everson* and *Vasey & Mattoon, contra.*

*Harold C. Linahan, W. W. Wenstrand, Edward Sklenicka* and *Alfred A. Raneri, amici curiæ.*

Heard before SIMMONS, C. J., ROSE, EBERLY, PAINE, CARTER, MESSMORE and JOHNSEN, JJ.

CARTER, J.

This is a suit in which George E. Williams seeks to recover benefits under the workmen's compensation law for injuries sustained while in the alleged employ of the city of Wymore. The trial court denied an award, and plaintiff appeals.

It appears from the record that on April 4, 1938, plaintiff was engaged as a common laborer in breaking ledge rock with a sledge hammer and thereafter lifting and placing it in a pile. While so engaged, plaintiff stepped on a small rock which turned and caused him to injure his back. The primary question for determination is whether plaintiff was an employee of the city.

The record shows that a proposal of the city for the construction of improvements on certain of its streets had been accepted by the Works Progress Administration of the federal government, and on the date of plaintiff's injury the improvements were being made. The city had agreed to furnish for such construction work certain equipment, material, supplies and other items, including superintendence, in an amount totaling $4,962, of which $1,100 was for superintendence. The Works Progress Administration furnished superintendence, material, equipment, supplies, all labor and other items totaling $17,037, of which $1,267 was for superintendence.

At the time of his injury, plaintiff was working in a rock quarry a mile and a half east of Wymore. The quarry was leased by the city. The outbuildings and equipment, including the rock crusher, tools, trucks and wagons, belonged to the city, and were being used in connection with the project. The evidence is clear that the project was directed by the Works Progress Administration and not by the city. The record further discloses that the Works Progress Administration employed the plaintiff, and that he was what is generally called a W. P. A. worker. He was under the direction and control of the Works Progress Administration, which fixed his hours of employment, his wages and labor classification, and had the sole right to supervise his work and to discharge him if necessary. In this connection it is pointed out that the plaintiff never applied to any officer of the city for employment; that he had previously been and had continued to work as a W. P. A. worker; that he was selected through regularly established W. P. A. channels; and that the city did not pay or agree to pay the plaintiff. We think the evidence is clear that the city had no control or supervision over the plaintiff on this project, and that the right to direct the manner in which the work was to be done, as well as the result to be accomplished, was in the Works Progress Administration. This is the primary test in determining whether the relation of master and servant existed. *Curry v. Bruns,* 136 Neb. 74, 285 N. W. 88; *Home Savings & Loan Ass'n v. Carrico,* 123 Neb. 25, 241 N. W. 763.

Plaintiff urges that the fact that the city was to provide a part of the superintendence is evidence that it had the right of control. It is true that among the items of estimated cost of execution of the project assigned as part of the city's contribution was the item of superintendence. This was, in a sense, a contribution in kind for which the city was to be given credit on its contribution to the cost. It is not even intimated that the city was to control the manner of doing the work because of this provision. It may be noted that the Works Progress Administration was

also to furnish superintendence; in fact the greater part of the cost of superintendence was to be furnished by it. The proposal, so far as costs are concerned, appears to be nothing more or less than an analysis of estimated costs of the whole project, showing the items or parts of items that the city would contribute to make up the total contribution required of it. The ultimate and actual agreement made by the city was not to execute the work but, as shown in the project proposal, to "finance such part of the entire cost thereof as is not to be supplied from federal funds."

Plaintiff contends that the fact that Clem Hudson, the city's street commissioner, was employed as a superintendent of the project, evidences that the city was the employer of the plaintiff. It appears also that the salary of Hudson was paid by the city. These are, of course, circumstances to be considered. The evidence shows, however, that Hudson was superintendent of the project under the direction and supervision of the area engineer of the Works Progress Administration. He was not acting in his capacity as street commissioner or as an agent of the city. The fact that an employee is the general servant of one employer does not, as a matter of law, prevent him from becoming the particular servant of another, who may become liable for his acts. *Curry v. Bruns,* 136 Neb. 74, 285 N. W. 88. While it is true that the result of the project was beneficial to the city, and was the type of construction which the city had authority to undertake, yet the elements necessary to establish the relationship of master and servant are lacking. In this connection it was necessary for the city officials to certify that "This project will not cover work for which funds at the disposition of the sponsor (city) are currently appropriated, or work included in the normal governmental operations of sponsoring agency; it will not result in the displacement of regular employees of this agency."

It is not necessary, of course, that all indicia of the relationship of master and servant be present to sustain a finding that it did exist, and, on the other hand, the fact that some exist does not conclusively establish such a re-

lationship. The test usually invoked in this state is whether the alleged employer has the control of the workman and of the details, mode and manner of doing the work. We are obliged to hold that, under the evidence in this case, the plaintiff was not in the employ of the city at the time of his injury.

In a similar case the Washington court held: "The city's application to the civil works administration amounted to the tender of a project for execution. The administration could, as it did in this instance, impose conditions upon its acceptance of the project, the condition imposed here being that all material required was to be supplied by the city; and, further, that, in so far as required and necessary, the administration should have the use of the city's operating departments. So that any technical employees of the city detailed to the Federal government in the prosecution of the project became, to the extent they were employed, a part of the administration's working organization, even though paid by the city; in other words, they were as much a part of the city's contribution to the project as the material and the site." *Brooks v. City of Seattle,* 193 Wash. 253, 74 Pac. (2d) 1008.

Also, in *City of Los Angeles v. Industrial Accident Commission,* 9 Cal. (2d) 705, 72 Pac. (2d) 540, the court said: "Courts have judicially noticed the fact that the primary objective of the Federal Emergency Relief Act of 1935 (15 U. S. C. A. sec. 728, note) was not to benefit particular municipalities or localities, but to provide relief for unemployment. By contributing a small part of the necessary expense and by contributing the services of a superintendent and a small number of employees the city of Los Angeles was able to obtain the benefit of this project. It was not, however, city work of which the city had control, but was under the rules and regulations of the Emergency Relief Administration."

Other cases sustaining this position are: *Hoover v. Independent School District,* 220 Ia. 1364, 264 N. W. 611; *Shapiro v. Winston-Salem,* 212 N. Car. 751, 194 S. E. 479;

*Taylor v. City of Los Angeles,* 29 Cal. App. (2d) 181, 84 Pac. (2d) 242; *Dabelstein v. City of Omaha,* 132 Neb. 710, 273 N. W. 43.

Plaintiff contends that *Hendershot v. City of Lincoln,* 136 Neb. 606, 286 N. W. 909, sustains his right to recover. The factual situation was altogether different in the *Hendershot* case. As pointed out in that case, the federal government assumed the role of sole employer of relief workers on Works Progress Administration projects on August 1, 1935. The injury in the *Hendershot* case occurred prior to August 1, 1935, at a time when the state and its governmental subdivisions were the employers under the laws then existing. This alone is such a change as to destroy the applicability of the *Hendershot* case to the one at bar.

Plaintiff contends that the situation existing in the present case constitutes a scheme, artifice or device to enable the city to execute work without being responsible to the workmen under the provisions of the workmen's compensation law, contrary to section 48-116, Comp. St. 1929. We find nothing in the record to sustain any such assertion. Our holding does not leave W. P. A. workmen without a remedy, as the federal congress has provided compensation benefits by federal statute. 5 U. S. C. A. sec. 796. The plaintiff was not unaware of his rights, as is shown by the fact that he looked first to that agency for relief.

We conclude that the trial court, after a careful consideration of the case as evidenced by an able opinion appearing in the record, correctly held that plaintiff was not an employee of the city of Wymore. The judgment is therefore affirmed.

AFFIRMED.