JOSEPH SOULEK, APPELLEE, v. CITY OF OMAHA ET AL., APPELLANTS.

299 N. W. 368

FILED JULY 18, 1941. No. 31002.

*Harold C. Linahan, W. W. Wenstrand, Edward Sklenicka* and *Alfred A. Raneri,* for appellants.

*Gordon Diesing, contra.*

Heard before SIMMONS, C. J., ROSE, CARTER, MESSMORE and YEAGER, JJ., and MEYER and ELLIS, District Judges.

MEYER, District Judge.

This is an action for damages for personal injury. Plaintiff had judgment against each defendant in the amount of $4,000. Both appealed.

The petition alleges that the city of Omaha and the Works Progress Administration were engaged as joint adventurers in the construction of a fire barn for said city and in the extension and repair of the city garage; that on the morning of February 2, 1939, the defendant Dunn, a timekeeper of said administration, was negligently driving from one of said projects to the other in his employment on said works when he collided with an automobile driven west on Capitol avenue in the city of Omaha by one James H. Adams, causing the automobile of said Adams to strike and injure the plaintiff, who at that time was walking south on the west cross-walk of Thirteenth street at the intersection of Capitol avenue. Defendants allege that the plaintiff was guilty of contributory negligence and complain that the trial court did not instruct on that issue.

There is little dispute in the evidence. Dunn had written up the daily time sheets on one project and at the time of the accident was going to the other for the same purpose. Adams testified that before the collision he stopped his car at the east intersection of Capitol avenue with Thirteenth street and looked in both directions; that the Dunn car was approximately 200 feet north of the intersection; that he shifted gears and drove west on the right side of the street at 12 or 15 miles an hour; that when in the northwest corner of the intersection his car was struck by the Dunn car, causing it to strike the plaintiff who was on the crosswalk walking south. The testimony of three disinterested witnesses who viewed the collision from different nearby points is to the same effect. They also state that Dunn was driving 35 to 40 miles an hour and that without slackening his speed he smashed head-on into the right side of the Adams car. It was a clear day, the streets were dry and there were no stop or slow signs at the intersection. Dunn admitted before trial that he did not see the Adams car before the collision. We fail to find any evidence in the record that would warrant the trial court in giving an instruction on contributory negligence.

It is also urged that the court erred in failing to require a remittitur. The medical testimony is to the effect that plaintiff's back, shoulder and leg were badly bruised; that he sustained a comminuted fracture four inches below the knee of his left leg; that the large bone was broken in three places and the small bone broken across in a simple fracture; that he was in the hospital 23 days; that he wore a cast from the thigh to the toes for nine weeks, one from the knee to the toes for six weeks thereafter, and a small cast for a month or so later; that he still had a half inch atrophy of the calf and thigh muscles of said leg and only a 90 degree range of flexion in the knee and ankle; that his leg was shortened one-fourth inch; that there was a large tumor mass over the site of the fracture; that the alignment was good; that incoordination would partially disappear if plaintiff walked more, and that the reasonable charge for medical

services was $200. Plaintiff testified that he used crutches until July of 1939, and that his left leg, knee and back caused him great pain and that he was unable to sleep. He was 58 years of age at the time of the accident and was then earning $21 a week loading fruit and vegetable trucks and at other jobs, and at the time of trial was not capable or able to earn more than $3.50 a week. We are not disposed to disturb the judgment. Unless the amount of the verdict appears to be clearly wrong or the result of passion, prejudice or mistake, it will not ordinarily be set aside on appeal as excessive or be reduced by remittitur.

Defendants also complain about certain remarks made by the court during trial with reference to one of the exhibits. We have examined the record and find that same were not prejudicial.

The city contends that the trial court erred in refusing to direct a verdict in its favor, for the reason that the evidence was insufficient to establish a joint adventure between the W. P. A. and said defendant.

"A joint adventure as a legal concept is * * * purely the creature of our American courts." 33 C. J. 841. It is in the nature of a limited partnership. *Bank of Cedar Bluffs v. LeGrand,* 127 Neb. 183, 254 N. W. 892. It "can exist only by the voluntary agreement of the parties to it; * * * nor can it arise by mere operation of law." 33 C. J. 847. The contract need not be express, but may be implied in whole or in part from the apparent purposes, the acts and conduct of the parties. *O. K. Boiler & Welding Co. v. Minnetonka Lumber Co.,* 103 Okla. 226, 229 Pac. 1045. It is said to exist where persons embark on an undertaking without entering on the prosecution of a business as partners strictly, but engage in a common enterprise for their mutual benefit. *Bosteder v. Duling,* 117 Neb. 154, 219 N. W. 896; *Sander v. Newman,* 174 Wis. 321, 181 N. W. 822; *Chisholm v. Gilmer,* 81 Fed. (2d) 120; *O'Neil v. Stoll,* 218 Ia. 908, 255 N. W. 692; *Dexter & Carpenter v. Houston,* 20 Fed. (2d) 647; *Goss v. Lanin,* 170 Ia. 57, 152 N. W. 43. The mere pooling of property, money, assets, skill or knowledge does not create the

relationship. *Bank of Cedar Bluffs v. LeGrand, supra.* And the absence of mutual interest in the profits or benefits is conclusive that a partnership or joint adventure does not exist. 47 C. J. 668. The principal distinction between a partnership and a joint adventure is that the latter may relate to a single transaction. *Slater v. Clark & Co.,* 68 Ill. App. 433. "The fact that the contract provides for a sharing of the profits, while an important factor in determining the character of the contract, does not of itself make it one of joint adventure. There must be something more, some active participation in the enterprise; some control of the subject-matter thereof or property engaged therein." 33 C. J. 847. See *Griffiths v. Von Herberg,* 99 Wash. 235, 169 Pac. 587; and of the means employed to carry out the common purpose (*Troietto v. G. H. Hammond Co.,* 110 Fed. (2d) 135); some community of interest in the business (*Wallace v. Pacific Electric Ry. Co.,* 105 Cal. App. 664, 288 Pac. 834; *Holcomb v. Lorino,* 124 Tex. 446, 79 S. W. (2d) 307); each to have a voice in its control and management (*Gleichman v. Famous Players-Lasky Corporation,* 241 Mich. 266, 217 N. W. 43).

The law of partnership applies to the questions arising between the parties and among the parties in relation to third parties. Each member of a joint adventure has a dual status—that of principal for himself, and as an agent for the others. *Irvine v. Campbell,* 121 Minn. 192, 141 N. W. 108; 47 C. J. 666. And the negligence of one will be imputed to both. *Keiswetter v. Rubenstein,* 235 Mich. 36, 209 N. W. 154. In the absence of agreement otherwise, if one pays a joint liability of himself and associates or a debt incurred in the business, he is entitled to proportionate contribution from his associates. 33 C. J. 855.

The essentials of the relationship have been frequently stated in automobile accident cases when contributory negligence is alleged and it is sought to impute the negligence of the driver to the passenger, in which cases the courts have generally held that to constitute the relationship there must be an agreement to enter into an undertaking in the objects of which the parties have a community of in-

terest and a common purpose in performance, and each of the parties must have equal voice in the manner of its performance and control of the agencies used therein, though one may entrust performance to the other. *Jessup v. Davis,* 115 Neb. 1, 211 N. W. 190. In *Rosenstrom v. North Bend Stage Line,* 154 Wash. 57, 280 Pac. 932, two high school football players discovered they had left their locker keys at home. One offered to drive the other to procure the keys. The driver was negligent and his companion was injured. The court held there was no joint adventure, saying: "The one had no interest, as that term is understood in the law of joint adventure, in procuring the key of the other, and in going for them, their purpose was in no sense common or joint, but rather separate and independent." In *Carboneau v. Peterson,* 1 Wash. (2d) 347, 95 Pac. (2d) 1043, a similar case, the court said: "Two parties may be engaged in the performance of a purpose or object which may be for the sole interest or advantage of one and from which the other is to derive no benefit, or the interest of one may be different and distinct from that of the other, in which cases there would not be a joint adventure." Plaintiff claims that the tests applied in this class of cases is not applicable to the facts herein. However, we think the basic principles are the same. Certainly the essentials of the relationship to be established before it can be said that there is such privity between the parties that one is chargeable with the negligence of the other should be the minimum essentials to be established in order to create a relationship in which one can be held liable for the negligence of a party employed by the other.

In view of the foregoing and other authorities, it is apparent that the relationship depends largely upon the legal intent as manifest from the facts and circumstances involved in each particular case. It may be concluded, however, that in order to establish a joint adventure the parties must enter into a contract, express or implied, as joint owners or principals. It must be an arrangement for their mutual benefit in the pursuit of which each has equal voice,

control and authority, although performance may be entrusted to one. There must be a community of interest in the objects and purposes of the enterprise, without which there can be no joint adventure.

We do not think the evidence shows that any such relationship was intended or in fact created herein. The record discloses that the extent of the city's responsibility was to furnish such part of the entire cost of the projects as was not supplied from federal funds. Specifically it agreed that the funds set out in the project proposals to be furnished by the sponsor would be available. W. P. A. agreed to furnish superintendence, material, all labor and other items. The city had no right to hire or direct employees, no control over any business or the means or agencies used to further said projects. It did not pay Dunn, have any right to fire him, tell him what to do or where to go. It had no authority to supervise his work or to tell him how to travel from job to job, whether by automobile or otherwise, or in what condition to keep his car. The entire control of the expenditures, employees and the work on both projects was at all times under the absolute direction of the W. P. A. Furthermore, the sole purpose of the W. P. A. was to furnish work relief for those in need and it restricted its employment rolls in order to accomplish this purpose. The city was not free to require that the employees be secured in the open field upon the basis of efficiency and because of known qualities as careful workmen. Neither was there community of interest in any business or property or the ends to be accomplished. The buildings involved were city buildings. The W. P. A. acquired no interest in them by reason of the project. The purposes and objects sought by each were separate and distinct and it could hardly be said, we think, that the projects were conducted for their mutual benefit, an essential prerequisite to the establishment of a joint adventure. The Works Progress Administration is merely a bureau or agency of the national government created by statute to render public service—by furnishing employment —from which it derives no direct benefit. Nor did the gov-

ernment ever intend, we think, to enter into an arrangement whereby it would be liable to the city for contribution as a partner, nor for any financial obligations beyond those specified, nor was it obligated under its agreement to complete the ventures—circumstances to be considered in determining legal intent. The relationship here formed is not such as would likely exist between individuals. In the case of *Dabelstein v. City of Omaha,* 132 Neb. 710, 273 N. W. 43, we referred to C. W. A. as a contractor. So also W. P. A. might be likened herein to a labor contractor who, to promote projects for relief purposes, also contributed part of the material and the major portion of the funds. A contractor represents the will of his employer only as to the result of his work, and not as to the means by which it is accomplished. To this extent at least the relationship outlined partakes of that of contractor and contractee, but whatever the characterization, we think the arrangement shown by the evidence will not stand the tests which determine joint adventure.

We have examined many cases in which it was sought to hold a municipal subdivision liable in compensation to a relief worker or for his negligence. These cases have uniformly held that there was no liability, for the reason that the relation of master and servant did not exist. See *Williams v. City of Wymore,* 138 Neb. 256, 292 N. W. 726; *Shapiro v. City of Winston-Salem,* 212 N. Car. 751, 194 S. E. 479; *City of Los Angeles v. Industrial Accident Commission,* 9 Cal. (2d) 705, 72 Pac. (2d) 540. In none of these cases was the theory of joint enterprise discussed, although the fact situation in all is very similar.

Plaintiff admits that he does not find any direct authority for his position, but cites *Johnson v. City of Billings,* 101 Mont. 462, 54 Pac. (2d) 579, in support thereof. In that case, the city of Billings and Yellowstone county entered into an agreement to construct a drainage ditch. Later, help was obtained from C. W. A. The court held the city and county jointly liable for the negligence of one of the employees acting under the direction of the county. With-

out dispute, however, the drainage ditch was constructed for the joint and mutual benefit and use of both sponsors. Nor did the court find that C. W. A. and either sponsor occupied the relationship of joint adventurers. Herein, except for the fact that the city of Omaha and W. P. A. each made contribution to city projects, the record fails to present any legal indicia of the joint adventurer relationship generally recognized by the courts, and in our view will not sustain a finding based on the claim that such relationship existed between them. The city's motion for a directed verdict should have been sustained.

The judgment is affirmed as to the defendant Arthur L. Dunn. It is reversed and the action dismissed as to the city of Omaha.

AFFIRMED IN PART AND IN PART REVERSED AND DISMISSED.