JOSEPH J. ROSSBACH, APPELLANT, v. JOHN L. BILBY, APPELLEE.

52 N. W. 2d 747

Filed April 4, 1952. No. 33143.

576

*Paul I. Manhart* and *Henry C. Winters,* for appellant.

*Fred N. Hellner,* for appellee.

Heard before SIMMONS, C. J., MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

MESSMORE, J.

Joseph J. Rossbach, plaintiff, brought this action against John L. Bilby, defendant, in the district court for Douglas County to establish an oral agreement of a joint adventure between the plaintiff and defendant for the purpose of dealing in and supplying stone to purchasers who might require such product, for an accounting and determination of the rights of the parties, and for damages. Trial was had to the court. The court rendered judgment, finding generally in favor of the defendant and against the plaintiff. The plaintiff did not file a motion for new trial. Plaintiff appeals.

For convenience we will refer to the parties as they appear in the district court, and in some instances by their last names as a matter of clarity.

The principal assignment of error contended for by the plaintiff is that the trial court erred in holding the plaintiff had not proved his oral contract to establish a joint adventure as pleaded in his petition, and in dismissing the plaintiff's cause of action at plaintiff's costs.

This action being equitable in nature comes under the provisions of section 25-1925, R. R. S. 1943, and is

here for review de novo. Byram v. Thompson, 154 Neb. 756, 49 N. W. 2d 628.

The evidence on many material questions of fact is conflicting. This is particularly true with regard to the testimony of the plaintiff and defendant. The record presents a factual situation to which the following is applicable: "This being an equitable action it will be tried de novo in this court pursuant to section 20-1925, Comp. St. 1929, and we will reach an independent conclusion without referring to the findings of the district court. Subject, however, to the condition that when the evidence on material questions of fact is in irreconcilable conflict this court will, in determining the weight of the evidence, consider the fact that the trial court observed the witnesses and their manner of testifying and must have accepted one version of the facts rather than the opposite." Rettinger v. Pierpont, 145 Neb. 161, 15 N. W. 2d 393. See, also, Byram v. Thompson, *supra.*

The plaintiff not having filed a motion for new trial, this court has jurisdiction and authority to try the case de novo on its merits in the manner provided by section 25-1925, R. R. S. 1943, but in the absence of a motion for new trial timely filed, it cannot review, consider, or pass upon errors of law which occurred during the trial. See Molczyk v. Molczyk, 154 Neb. 163, 47 N. W. 2d 405.

"A joint adventure is a legal relation of recent origin created by the American courts and is generally described as an association of persons to carry out a single business enterprise for profit." 48 C. J. S., Joint Adventures, § 1, p. 801.

"Although it has been held that a joint adventure and a partnership are separate legal relationships, it has also been held that they are governed by the same rules of law. The principal difference is that a joint adventure is usually, but not necessarily, limited to a single transaction." 48 C. J. S., Joint Adventures, § 1, p. 806. It is in the nature of a limited partnership.

See, Bank of Cedar Bluffs v. LeGrand, 127 Neb. 183, 254 N. W. 892; Soulek v. City of Omaha, 140 Neb. 151, 299 N. W. 368. It can only exist by the voluntary agreement of the parties to it; nor can it arise by mere operation of law. It is said to exist where persons embark on an undertaking without entering on the prosecution of a business as partners strictly, but engage in a common enterprise for their mutual benefit. Bosteder v. Duling, 117 Neb. 154, 219 N. W. 896; Soulek v. City of Omaha, *supra.*

The existence of a joint adventure is a question of fact under the evidence, and further, more convincing evidence is required to prove existence of a joint adventure where alleged joint adventure parties are the only litigants than where the controversy is between a third party and the joint adventurers. The burden of establishing the joint adventure is on the plaintiff. See, Baum v. McBride, 143 Neb. 629, 10 N. W. 2d 477; Soulek v. City of Omaha, *supra.*

To constitute joint adventure there must be an agreement to enter into an undertaking in the objects of which the parties have a community of interest and a common purpose in performance, and each of the parties must have equal voice in the manner of its performance and control of the agencies used therein, though one may entrust performance to the other. See Soulek v. City of Omaha, *supra.*

The question presented in this appeal is whether or not a joint adventure existed.

With the legal principles set forth in the foregoing authorities in mind, we proceed to a review of the evidence.

The record shows that Rossbach, the plaintiff, a resident of Omaha since 1906, operated the Nebraska Stone Company, a corporation, for 30 years. Rossbach testified that sometime in April 1948, he was in the office of one Harry Stitt, a brother-in-law of the defendant Bilby, when the defendant came in and inquired of him

what he was doing, to which he replied: "Not much of anything, I am selling building material." The defendant then said: "Why don't we go into the stone business?" The plaintiff replied: "That is an idea." On May 4, 1948, the plaintiff was in the same office when the defendant came in. The defendant said to Stitt: "Harry how much do you want for this office?" Stitt had a vacant room in the building. Stitt said: "Who wants to know?" The defendant said: "* * * Rossbach and I want to go into the stone business, and we want an office." Stitt replied: "* * * I wouldn't rent it to anybody, but as a favor I will rent it for $25.00." Nothing further happened until June 12, 1948, and the plaintiff called the defendant to find out if he had given up the idea. The defendant said he would see him Sunday, so the plaintiff went to see the defendant on Sunday, June 13, 1948. Rossbach testified further that they had a conversation with reference to going into business. Bilby told the plaintiff to come to his store yard the next day at 9 a. m., which plaintiff did. Bilby was not there but telephoned to tell plaintiff that he was busy and would call later, which he did not do. On June 20, 1948, plaintiff went to Bilby's house. Bilby was favorable to making further arrangements. He said he would put up $5,000, and he wanted 5 percent return on his money, plaintiff was to take the rest. Plaintiff said that was a fair proposition. Plaintiff was to manage the stone business and, in addition, undertake the bookkeeping for such business and defendant's contracting business. Plaintiff told the defendant he would draw $50 a week for doing the bookkeeping, which was aside from the management of the stone business. They agreed to go into the stone business at that time. Defendant insisted on 5 percent return on his money. Rossbach said that going in on a fifty-fifty basis would be better, and instead of plaintiff operating the business alone defendant should protect his interest and see what was going on, and what the money was spent for.

Defendant asked Rossbach what assurance he had that plaintiff would remain with the business. Plaintiff told him that it was understood that he was going into the stone business as a permanent venture. They agreed to go into the business for a year and at the end of that time if it was successful they would incorporate. On June 21, 1948, plaintiff went to the defendant's con- struction yard. There was no building for an office and defendant asked plaintiff to inquire of the Reed Ice Cream Company to see if one of their vacant buildings could be procured. Nothing further was said or done. On July 8, 1948, defendant called plaintiff about the Reed building. Plaintiff told him that they could not procure space there. Plaintiff also told defendant he had another chance to go into business and he wanted to know if they were going ahead with the stone busi- ness. Defendant said they were. Nothing further occurred during the summer. On September 14, 1948, the parties went to a place where an office was being built by the defendant. Plaintiff told the defendant it was not large enough, but defendant said it was. De- fendant then wanted to know what name should be used in the business. Rossbach told defendant they would take the name "Nebraska Stone Supply Com- pany," not the Nebraska Stone Company. They agreed on that. Rossbach's name was synonymous with the Nebraska Stone Company. The matter continued along until the defendant called plaintiff on October 13, 1948. He informed plaintiff that he knew where some stone could be sold, and asked plaintiff to contact the party which he did and made the sale. The office was com- pleted, and Rossbach started to work. They concluded they needed some furniture which plaintiff furnished and put in the office. They then started operation. Stationery was prepared, and they advertised "thirty years of experience in every phase of the stone in- dustry" in letters signed by J. J. Rossbach which were sent out to the trade in which they explained their

line and business under the name of Nebraska Stone Supply Company.

About June 20, 1949, Bilby called in Mrs. Futcher to take over the bookkeeping, and told plaintiff to go out and sell stone. Then, during the morning of August 12, 1949, Bilby called Rossbach into the office and said: "I don't want you any more," and told him they were through.

On cross-examination the plaintiff testified that he was an employee of the defendant only to the extent of the bookkeeping arrangement. He was noted on the payroll of the company as an employee; likewise, he was noted on the social security records as an employee, and paid the social security premium required of him. On August 2, 1949, he signed a statement prepared by Mrs. Futcher wherein he was reimbursed for two trips made in behalf of the company, for a desk which was purchased from him, and his salary to date based on $50 a week. When he left the office he made no statement to defendant that he was a partner or engaged in a joint adventure, and that he was not subject to have his services terminated. Further, when Mrs. Futcher took over the bookkeeping in June, he continued to draw his weekly salary of $50 until such time as he signed the release. At that time he was engaged in teaching the men how to handle the saw to cut stone, and other matters which were not incident to management of the business.

Bilby testified that he was acquainted with the plaintiff for a number of years, and met him on the dates as testified to by him, as near as he could remember. Prior to meeting the plaintiff he had engaged to some extent in the stone business, and was jobbing stone as well as being engaged in the construction business. His business had increased to the extent that he and his wife were required to work on the books at night, to enable him to make his estimates and do work incident to his business in the daytime. He owned a lot and yard at 3730 Lake

Street, which is now a stoneyard. He testified that he was down there working one day when the plaintiff came over to the yard. The plaintiff had been endeavoring to get some office space from Stitt who had divided the space in his building. The plaintiff at that time had an architect with him. He told the defendant that the architect wanted him to sell stone on commission, but he did not want to. Bilby further testified that Rossbach asked him why he did not go into the stone business instead of jobbing stone. He told plaintiff the only reason he would go into that business in a large way, or build an office, was to make an arrangement so that his books could be taken care of and he could carry on the work of the construction company in the daytime. Rossbach said he would certify to the public as a bookkeeper and that he could take care of the defendant's books, with the amount of business he transacted, in 15 minutes a day. They dropped the subject. Rossbach called at Bilby's home on different occasions in the morning, evening, and on Sunday, urging him to go ahead and build an office and go into the stone business instead of jobbing stone, which he finally did.

With reference to the employment of Rossbach, Bilby testified that Rossbach said he was selling some kind of special line that took him out on the road once in a while and he was getting pretty old for that sort of work. His car was practically worn out, and he wanted to get something to do in town. He agreed to go to work for Bilby for $50 a week. He was to take care of the books of the construction company, manage and operate the stoneyard, and go out and sell stone. It was to be Bilby's stone business. The defendant denied entering into any partnership arrangement or joint adventure with the plaintiff, or that he would take the plaintiff into the business and share the profits. He testified that they were to try out the arrangement for a year. There was no mention of incorporating. Rossbach sold some stone before reporting to work, and sold some after he

took the job. Bilby further testified that he was unable to get Rossbach to go out and sell stone, and that he would not call on the list of prospects they had. On August 1, 1949, Bilby gave Rossbach a list of people to call on, and he did not call on them. About 10 o'clock the morning of August 2, 1949, Rossbach was not at the office. Bilby called him in and asked him for his keys, and told him "* * * you are through; you are fired." He replied "You have not heard the last of it." He then signed a statement prepared by Mrs. Futcher in full for his salary through August 2, and other items, although Rossbach testified that he was discharged on August 12, 1949.

Bilby further testified that he had met Rossbach in Stitt's office many times. He had no conversation with Rossbach in Stitt's office about going into the stone business. Stitt and an architect were considering going into the business and wanted Rossbach to work for them on a commission. Bilby also testified that he did not agree to put in any certain amount of capital; that he did borrow $4,000 at one time, $2,000 of which was used in the construction business and $2,000 in the stone business; and that the stone company paid the interest on its loan to the bank. He had as high as $15,000 in the stone business at one time. He denied suggesting the use of the name Nebraska Stone Company or Nebraska Stone Supply Company. He testified that when he asked Rossbach "How are we doing?" he used the term "we" without any particular significance. He did talk to Rossbach about purchasing a saw that could be used in the business. It was impossible for him to tell by Rossbach's books the status of the business, and he noticed that the entries by the plaintiff were not kept up, but appeared up to February 1, 1949. As a result he obtained the services of Mrs. Futcher to keep the books.

The defendant's wife testified that on several occasions Rossbach came to their home to see the defendant. She was under the impression that he was seeking

employment. It was a task for her to keep the books and tend to her family obligations. She kept the social security records until Mrs. Futcher took over the bookkeeping. She still did some book work at the office, and it was apparent to her that Rossbach resented her coming to the office.

Harry W. Stitt testified that he believed Rossbach worked for Bilby doing book work either in 1948 or 1949; that no conversation was had in his presence with reference to Rossbach and Bilby going into the stone business at any time; and that he remembered that they wanted to rent a building and he told them they could have the space in his office for $25 a month.

From an analysis of the evidence, and in the light of the authorities heretofore cited, we conclude that the evidence is insufficient to establish a joint adventure. Other assignments of error need not be discussed. The decree of the trial court should be, and is hereby, affirmed.

AFFIRMED.