HAROLD DUNN, APPELLANT AND CROSS-APPELLANT, V. EDWIN J. HEMBERGER ET AL., APPELLEES, EUGENE HEMBERGER, APPELLANT AND CROSS-APPELLEE.

430 N.W.2d 516

Filed October 21, 1988.    No. 86-661.

D. Steven Leininger, of Luebs, Dowding, Beltzer, Leininger, Smith & Busick, for appellant Dunn.

John A. Wagoner and Robert W. Wagoner for appellant Hemberger.

James D. Smith, of Brock, Seiler & Smith, for appellee Norbert Hemberger.

HASTINGS, C.J., WHITE, SHANAHAN, and FAHRNBRUCH, JJ., and WARREN, D.J.

SHANAHAN, J.

When the truck-pickup collision occurred, Edwin Hemberger was driving a truck owned by his parents, Norbert and Madeline Hemberger, and was hauling grain harvested from fields of his uncle, Eugene Hemberger. While transporting grain, Edwin ran a stop sign and struck a pickup driven by Harold Dunn, resulting in Dunn's bodily injury. Dunn sued Edwin (driver), Eugene (uncle), and Edwin's parents, Norbert and Madeline. Dunn based his claims on Edwin's negligent operation of the truck; an agency relationship between Eugene and Edwin; the family purpose doctrine regarding the truck supplied by Edwin's parents; and a farming joint venture between Eugene and Norbert, brothers who have separate farms in addition to their jointly leased farmland.

## HARVESTING

At the time of the accident, Norbert owned 240 acres of farmland, Eugene owned 400 acres, and together they leased 300 acres from Louise Blind. Although each raised some cattle, Norbert and Eugene primarily grew corn, wheat, and other grain crops. Each planted his personally selected crop on his own land, individually bore the expenses of growing and harvesting those crops, and separately received any profit from his crop. Norbert and Eugene mutually determined what crops were planted on the rented tract and jointly owned a combine and grain wagon used for harvesting both their individually owned fields and their jointly leased land. The brothers equally shared income and expenses in farming their rented land.

At harvest time, Norbert, Eugene, and members of their

families worked together to harvest each brother's fields and the rented property. Dryness determined the priority of harvesting the fields. Generally, Norbert drove the combine, which Eugene followed with the grain wagon. Other family members drove trucks in hauling grain from the fields to storage bins or the local elevator. Grain from Eugene's fields was taken to storage bins on his farm, while the harvest from Norbert's fields was hauled to bins on Norbert's farm or taken to the local elevator. Grain from the leased land was usually taken to the local elevator.

On November 10, 1982, the Hemberger families were involved in harvesting. As usual, Norbert was running the combine, and Eugene was following with the grain wagon. Norbert's wife, Madeline, was not taking part in the harvest. However, Edwin and Eugene's wife and son were helping to haul corn from the harvested field to storage facilities. Edwin, age 22, had been away at college and, thus, was taking part in the family harvest for the first time in several years. Although Edwin had been working for a seed corn company during the summer, his job ended around the middle of October, allowing Edwin to participate in the harvest.

In the morning of November 10, Hembergers had been harvesting corn from one of Norbert's fields. After their noon meal, the family moved to Eugene's fields. Using a truck owned by Norbert and Madeline, Edwin was hauling corn from Eugene's field to a bin on Eugene's farm. Edwin knew the location of Eugene's grain bins and had not been given any specific instruction about hauling from the field to the bin. In hauling grain, Edwin had been traveling the same route all afternoon. Although Eugene could have dictated the route or destination for the grain, he did not explicitly direct Edwin's hauling the harvested corn. After several trips, Edwin was again on his way from the field to Eugene's bin with a load of corn, when he failed to halt the truck at a stop sign and collided with Dunn's pickup.

## THE TRIAL

On the basis of the theories characterized above, Dunn sued Edwin, Eugene, and Edwin's parents, Norbert and Madeline.

The court granted Madeline's motion for a directed verdict,

removing her from the action, and granted Dunn's motion for a directed verdict against Edwin on liability. The court refused to submit the question of a joint venture between Norbert and Eugene, and refused to direct a verdict for Dunn on the family purpose doctrine to impose liability on Norbert but submitted that question to the jury. The court also submitted the agency question, notwithstanding Dunn's request for a directed verdict on that question. On May 23, 1986, the jury returned its verdict against Edwin alone for $115,000.

On May 28, Dunn filed a motion for judgment notwithstanding the verdict (judgment n.o.v.), namely, judgment against Norbert on account of the family purpose doctrine and judgment against Eugene as the result of a principal-agent relationship with Edwin. As an alternative, Dunn requested a new trial against Norbert and Eugene, contending that the court erred by its refusal to submit the question of a joint venture between Norbert and Eugene. On July 10, the court granted judgment n.o.v. to Dunn, stating: "It now appears . . . that the court was in error" in denying a directed verdict for Dunn on the agency question involving Eugene and Edwin. The trial court expressed that, as a matter of law, the agency relationship had been evidentially established for imputation of Edwin's negligence and, therefore, Eugene's liability to Dunn. The court entered judgment for Dunn and against Eugene for $115,000, corresponding to the verdict against Edwin. The court then refused to grant judgment against Norbert or a new trial pursuant to Dunn's motion.

On July 16, Eugene moved for a new trial, alleging that the court's setting aside the verdict was not "supported by law" and that judgment n.o.v. against Eugene was "contrary and lacks support from the evidence." As an alternative to a new trial, Eugene asked the court to reinstate the verdict favorable to Eugene, which the court had vacated in conjunction with entry of the judgment n.o.v. for Dunn and against Eugene.

On August 11, Dunn filed his notice for appeal to this court. After Eugene's motion for new trial or reinstatement of the verdict was overruled on August 20, Eugene filed his notice of appeal to this court on August 25. Although, generally,

according to our rules, Eugene would be designated as an appellee, under the somewhat unusual circumstances of this appeal, we have permitted him to be shown as an appellant.

## JURISDICTION OF EUGENE'S APPEAL

In seeking dismissal of Eugene's appeal, Dunn contends that Eugene has not filed a notice of appeal within the time allowed by Neb. Rev. Stat. § 25-1912(1) (Reissue 1985), which provides:

> The proceedings to obtain a reversal, vacation, or modification of judgments and decrees rendered or final orders made by the district court . . . shall be by filing in the office of the clerk of the district court in which such judgment, decree, or final order was rendered, within one month after the rendition of such judgment or decree, or the making of such final order, or within one month from the overruling of a motion for a new trial in said cause, a notice of intention to prosecute such appeal [and] by depositing with the clerk of the district court the docket fee required by law in appeals to the Supreme Court.

In 1986, § 25-1912 was amended, effective January 1, 1987, by changing "one month" to "thirty days" in reference to the time for filing the notice of appeal and appellate docket fee. See § 25-1912(1) (Cum. Supp. 1986). The 1986 amendment also provided for suspension of judgment, pending disposition of a timely filed motion for new trial or a judgment n.o.v. See § 25-1912(2) (Cum. Supp. 1986). Those changes by the 1986 amendments of § 25-1912 are irrelevant to disposition of the jurisdictional question at hand in view of the effective date of the amendments after Eugene Hemberger had complied with statutory requirements of § 25-1912 (Reissue 1985) for an appeal to the Supreme Court of Nebraska.

Neb. Rev. Stat. § 25-1142 (Reissue 1985), which has not been amended since enactment in 1867, defines a new trial as "a reexamination in the same court of an issue of fact after a verdict by a jury, report of a referee, or a decision by the court," and provides eight specific bases or grounds for a new trial, including: "(6) that the verdict, report or decision is not sustained by sufficient evidence, or is contrary to law."

We are aware that in 1982 the Legislature, by enacting Neb. Rev. Stat. § 25-1912.01 (Reissue 1985), dispensed with the

necessity of a motion for new trial as a prerequisite to appellate review in certain situations. See, also, *Caro, Inc. v. Roby*, 215 Neb. 897, 342 N.W.2d 182 (1983).

Eugene's motion for new trial was filed July 16, within 10 days from the judgment n.o.v. for Dunn on July 10. Eugene filed his notice of appeal on August 25, within 5 days after his motion for new trial was overruled but more than 1 month after judgment n.o.v. had been entered for Dunn. The crucial question is: Was Eugene entitled to file a motion for new trial concerning the judgment n.o.v., thereby suspending the 1-month time limit for notice of appeal from the judgment n.o.v.?

Dunn points to the statutes governing entry of a judgment n.o.v. and the finality of a judgment n.o.v. for the purpose of an appeal to the Supreme Court. Neb. Rev. Stat. § 25-1315.02 (Reissue 1985) authorizes entry of a judgment n.o.v. if the appropriate motion is filed within 10 days after reception of the verdict to be set aside. Neb. Rev. Stat. § 25-1315.03 (Reissue 1985) relates to an appeal from a judgment n.o.v.:

> An order entering judgment, as provided in section 25-1315.02, or granting or denying a new trial, is an appealable order. The time for and manner of taking such appeal shall be as in an appeal from a judgment, decree, or final order of the district court in a civil action. . . .

In substance, Dunn argues that a motion for new trial does not suspend or toll the time limit for an appeal from a judgment n.o.v.

To support his argument, Dunn directs our attention to *Krepcik v. Interstate Transit Lines*, 151 Neb. 663, 38 N.W.2d 533 (1949), which was decided when a motion for new trial was indispensable for appellate review of a case involving a question of fact. In *Krepcik*, at the conclusion of all evidence, the defendant moved for a directed verdict, which was denied. After a plaintiff's verdict, the defendant timely filed a motion, seeking judgment n.o.v. or a new trial in accordance with § 25-1315.02 (Reissue 1948) enacted in 1947. Before 1947, a district court lacked authority for a judgment n.o.v. except in the case of judgment necessitated by the pleadings. However, § 25-1315.02 authorized a judgment n.o.v. or a new trial after

"determination of the legal questions raised by the motion" to vacate the verdict. Section 25-1315.03 (Reissue 1948) provided in pertinent part: "An order entering judgment as provided in section 25-1315.02, or granting or denying a new trial, is an appealable order, and the time for taking appeal shall commence to run from the date of entry of such order." After the court granted the defendant a judgment n.o.v., the plaintiff did not file a motion for new trial but filed a notice of appeal. In the appeal, the defendant moved for summary affirmance, contending that the Supreme Court's review was limited solely to the question whether the judgment n.o.v. was supported by the pleadings and that plaintiff's failure to move for a new trial precluded an appellate review on the merits of the judgment n.o.v.

The *Krepcik* court commented on the purpose underlying the statutory authority for appellate review of an order granting judgment n.o.v. or a new trial:

The purpose of [statutory procedure for appellate review of judgment notwithstanding the verdict or new trial] was to eliminate needless costs and effort, and to simplify and expedite the final disposition of litigation. It was obviously not the intention of the lawmakers that this legislation should be understood or interpreted to create pitfalls or to complicate the judicial process. If the terms of the act will reasonably permit, it should be construed to avoid these results.

151 Neb. at 668, 38 N.W.2d at 536.

In *Krepcik*, the court expressed:

The purpose of a motion for a new trial is to enable the court to correct errors that have occurred in the conduct of the trial. [Citations omitted.] . . .

. . . In considering and passing upon a motion for a judgment notwithstanding the verdict, the court does not examine any issue of fact. The court, by the mandate of the statute, considers the record made on the trial and decides as a matter of law whether the evidence already in the record justified the submission of the case to the jury or whether the court on the trial should have sustained the motion for a directed verdict. The court cannot, in such a

situation, weigh or consider any part of the evidence in the sense of deciding any issue of fact. The matter presented by the motion for a judgment is one of law. . . . The proceedings by the trial court on the motion of appellee for judgment was in the language of the statute only a "determination of the legal questions raised by the motion." . . .

. . . *The party against whom a judgment notwithstanding the verdict has been rendered does not want a new trial and should not be required to make application for a new trial, a ruling on which he might not be able to secure in the limited time permitted for an appeal. What he wants is the right of a review in this court of the correctness of the action of the trial court in setting aside the verdict and rendering a judgment adverse to him.*
. . .

. . . [N]o motion for a new trial should be required in reference to any order made by the court by virtue of the provisions of [statutes governing judgment notwithstanding the verdict or new trial and appellate review].

(Emphasis supplied.) 151 Neb. at 669-70, 672-73, 38 N.W.2d at 536-38.

The court in *Krepcik v. Interstate Transit Lines, supra,* then denied the defendant's motion for summary affirmance. Later, this court decided Krepcik's appeal on the merits. See *Krepcik v. Interstate Transit Lines,* 152 Neb. 39, 40 N.W.2d 252 (1949), *opinion after rehearing* 153 Neb. 98, 43 N.W.2d 609 (1950).

Two factors undermine the foundation for Dunn's premise that a motion for new trial does not suspend the time limit statutorily prescribed for an appeal from a judgment n.o.v., a premise based on *Krepcik v. Interstate Transit Lines,* 151 Neb. 663, 38 N.W.2d 533 (1949). First, in *Krepcik* a motion for new trial was not filed after the judgment n.o.v., while, in the case before us, a motion for new trial has been filed after the judgment n.o.v. in question. The court's statements in *Krepcik,* relative to the propriety of a motion for new trial after a judgment n.o.v., are dicta, and, therefore, do not control the present case. Second, § 25-1315.03 (Reissue 1948), which

included "the time for taking appeal shall commence to run from the date of entry" of the judgment n.o.v. or an order granting a new trial and which was construed in *Krepcik*, has been amended and now exists as § 25-1315.03 (Reissue 1985), which, in pertinent part, provides: "The time for and manner of taking [an appeal from a judgment n.o.v.] shall be as in an appeal from a judgment, decree, or final order of the district court in a civil action." Section 25-1912 (Reissue 1985), which controls the present appeal, prescribes the prerequisites for a timely appeal, that is, the filing of a notice of appeal and depositing the Supreme Court docket fee, both "within one month from the overruling of a motion for new trial." A motion for new trial is authorized to question whether a judicial decision, as a final order, is "contrary to law." See § 25-1142(6). Eugene Hemberger's motion for new trial sought the trial court's review of its decision that an agency existed, as a matter of law, between Eugene and Edwin. Therefore, Eugene's motion raised a question about the legal validity or correctness of the court's deciding the principal-agent relationship as a matter of law, notwithstanding the jury's determination of that issue as a factual conclusion. Consequently, by the procedure authorized in § 25-1142(6), Eugene's motion raised purely a question of law based on the evidence adduced at trial. In view of the express language of § 25-1142(6), we hold that a motion for new trial is authorized after a judgment n.o.v. and, during pendency of such motion, suspends or tolls the time limit to comply with requirements for an appeal to the Nebraska Supreme Court in accordance with § 25-1912. Because Eugene Hemberger has otherwise satisfied all the other requirements for a timely appeal, this court has jurisdiction to dispose of the assignments of error alleged in the present appeal.

## LIABILITY BASED ON A PRINCIPAL-AGENT RELATIONSHIP

Eugene Hemberger contends that a principal-agent relationship between Eugene and Edwin was a factual question, resolved favorably for Eugene by the verdict, and, therefore, was not determinable by the court as a matter of law and a basis for a judgment n.o.v. A motion for judgment n.o.v. may be sustained and a judgment entered in accordance with a previous

motion for directed verdict only where at the close of all the evidence a motion for a directed verdict was made, which motion should have been sustained but was overruled and the case submitted to the jury, which returned a verdict adverse to the movant. *Bourke v. Watts*, 223 Neb. 511, 391 N.W.2d 552 (1986).

On a motion for judgment n.o.v., the movant is deemed to have admitted as true all the relevant evidence admitted which is favorable to the party against whom the motion is directed, and, further, the party against whom the motion is directed is entitled to the benefit of all proper inferences deducible from the relevant evidence. *Kelly Klosure v. Johnson Grant & Co.*, 229 Neb. 369, 427 N.W.2d 44 (1988).

An agency is a fiduciary relationship, resulting from one person's manifested consent that another may act on behalf and subject to the control of the person manifesting such consent, and, further, resulting from another's consent to so act. *Equilease Corp. v. Neff Towing Serv.*, 227 Neb. 523, 418 N.W.2d 754 (1988); *Reeves v. Associates Financial Services Co., Inc.*, 197 Neb. 107, 247 N.W.2d 434 (1976). See, also, Restatement (Second) of Agency § 1 (1958).

Consistent with our standard of review, we must view the evidence on the agency issue in a light most favorable to Eugene, for whom the jury found that Edwin was not Eugene's agent. It is uncontroverted that Eugene never actually gave Edwin directions for disposition of the harvested corn, such as the destination of the harvested grain (although one must reasonably infer that Eugene's corn would be transported to Eugene's bin at a site known to Edwin), the route to be traveled in hauling the grain, or any other step to be taken in conjunction with transportation and delivery of Eugene's corn. The evidence indicates that the Hembergers, in their mutual harvesting, had a common but general understanding of what needed to be done and how to accomplish their task. The evidence fails to show that Eugene exercised any control over Edwin's activities during the harvest. Although there was evidence that Eugene could have controlled or directed Edwin's activities in hauling Eugene's corn and that Edwin would have followed Eugene's directions, there was also testimony that

Edwin could have refused to follow Eugene's directions, which might be reasonably characterized as suggestions rather than directions. Regarding the question about an agency, the interpretation of the conflicting evidence on the aspect of control, or consideration of the lack of evidence, was a matter for the jury, which found that Eugene was not liable to Dunn.

In view of the conflicting evidence, which created factual questions to be answered by the jury, the issue of agency was properly submitted to the jury. See, *Edwin Bender & Sons v. Ericson Livestock Comm. Co.*, 228 Neb. 157, 421 N.W.2d 766 (1988) (propriety of directed verdict); *Rahmig v. Mosley Machinery Co.*, 226 Neb. 423, 412 N.W.2d 56 (1987). Consequently, the judgment n.o.v. for Dunn, which was based on a conclusion of law that Edwin was Eugene's agent, must be reversed with direction to reinstate the verdict in favor of Eugene Hemberger on the issue of his vicarious liability for Edwin Hemberger's negligence. See § 25-1315.03 (Reissue 1985).

## FAMILY PURPOSE DOCTRINE

In his appeal, Dunn assigns as error the district court's failure to enter judgment n.o.v. against Norbert on the basis of the family purpose doctrine, imposing liability on Norbert for Edwin's negligent operation of Norbert's truck. Our standard of review has been previously mentioned in our discussion regarding the judgment n.o.v. against Eugene.

[W]here the head of the family purchases, owns, maintains, furnishes, or provides a motor vehicle for the general use, pleasure, and convenience of the family, and a family member is using the car with the express or implied consent or permission of the owner, the negligence of the family member driver is imputed to the head of the family. It is considered that the use of the vehicle for the pleasure and convenience of the family is in furtherance of the purpose of the head of the family in providing it, and under such circumstances it is treated as if it were being used in the conduct of the business of the head of the family. . . .

. . . .

. . . [T]o recover under the family purpose doctrine the

essential elements which must be proved are (1) that the defendant who is sought to be charged with liability was the head of his family, (2) that he furnished the car for the use and pleasure of his family, (3) that the driver of the automobile was a member of his family and one for whose use or pleasure the car was furnished, and (4) that the driver was, at the time of the accident, using the car for [the purpose for] which it was furnished with the authority, expressed or implied, of the head of the family.

*Marcus v. Everett,* 195 Neb. 518, 524, 526, 239 N.W.2d 487, 491-92 (1976).

Elements 1 and 4, set out in *Marcus v. Everett, supra,* are conclusively established. Norbert Hemberger was the head of his family and furnished the truck which collided with Dunn's pickup. At the time of the accident, Edwin was using the truck in furtherance of the purpose for which the vehicle was furnished, namely, hauling harvested corn to Eugene's grain bin.

Under the state of the evidence, whether Edwin was a family member and whether Norbert's truck was being put to a family use at the time of the accident were questions for the jury to resolve. *Marcus v. Everett, supra.* The jury resolved those factual issues in favor of Norbert Hemberger. We will not reweigh the evidence but do conclude that the verdict reached on Norbert Hemberger's liability concerning the family purpose doctrine is justified. The district court correctly denied a directed verdict for Dunn on the issue of Norbert's liability on account of the family purpose doctrine, and, consequently, correctly denied a judgment n.o.v. or new trial for Dunn on that issue.

## JOINT VENTURE LIABILITY

Dunn claims that the district court erred in refusing to submit to the jury the question whether Norbert and Eugene were involved in a joint venture. Dunn contends that Norbert and Eugene were involved in a joint venture for harvesting and that Edwin was acting as agent of the joint venture at the time of the accident.

Elements of a joint venture are set out in *Fangmeyer v. Reinwald,* 200 Neb. 120, 131, 263 N.W.2d 428, 434 (1978):

"[T]here must be an agreement to enter into an undertaking in the objects of which the parties have a community of interest and a common purpose in performance, and each of the parties must have equal voice in the manner of its performance and control of the agencies used therein, though one may entrust performance to the other." The relationship of joint venturers depends largely upon the intent of the alleged parties as manifested from the facts and circumstances involved in each particular case. The mere pooling of property, money, assets, skill, or knowledge does not create the relationship; there must be something more than mere sharing of profits, some active participation in the enterprise, and some control of the subject matter thereof or property engaged therein.

Quoting *Soulek v. City of Omaha*, 140 Neb. 151, 299 N.W. 368 (1941).

The evidence adduced at trial failed to show a joint venture. There was no indication that Norbert Hemberger had an equal voice in controlling the manner of harvesting Eugene's fields. Eugene decided if the corn should be picked and where it should be taken. Norbert received no part of Eugene's crop and was not entitled to a share of any profit from the harvested crop. The absence of mutual interest in the profits or benefits is conclusive that a partnership or joint venture does not exist. *Soulek v. City of Omaha, supra.* The evidence does indicate that the Hemberger families pooled their labor and skill for the harvest. However, such pooled labor and skill is insufficient to establish a joint venture between Norbert and Eugene. See *Fangmeyer v. Reinwald, supra.* In the absence of evidence of a community of interest in the profits and equal control of the harvesting operations, the district court correctly refused to submit the issue of a joint venture between Norbert and Eugene.

For the reasons given, the judgment n.o.v. granted to Dunn against Eugene Hemberger is reversed with direction to reinstate the verdict in favor of Eugene Hemberger. In all other respects, the judgment of the district court is affirmed.

AFFIRMED IN PART, AND IN PART REVERSED
AND REMANDED WITH DIRECTION.