Ronald L. POPEJOY and Doris J. Popejoy, Appellants (Plaintiffs),

v.

Carl STEINLE and the Converse County Bank, Personal Representatives of the Estate of William E. Steinle, Appellees (Defendants).

No. 90–255.

Supreme Court of Wyoming.

Nov. 8, 1991.

Michael D. Zwickl, Casper, for appellants.

David A. Drell of Vlastos, Brooks & Henley, P.C., for appellees.

Before URBIGKIT, C.J., and THOMAS, CARDINE, MACY and GOLDEN, JJ.

GOLDEN, Justice.

Appellants Ronald L. and Doris J. Popejoy (Popejoys) appeal the trial court's order granting summary judgment to appellees Carl Steinle and the Converse County Bank as personal representatives of the William E. Steinle Estate (Estate). Claiming that a joint venture relationship existed between William and his wife Constance E. (Connie) Steinle, the Popejoys seek to hold William's estate vicariously liable for Connie's alleged negligence in causing a traffic accident in which Ronald Popejoy was injured.

The Popejoys raise these issues on appeal:

1. The trial court erred in granting summary judgment on the issue of the joint venture relationship between William and Connie Steinle.

  a. May a person have a joint venture relationship with his spouse in the acquisition of an appreciable asset to be raised in the family's sole business enterprise?

  b. Is the gift of an appreciable asset, which is later to be sold, complete when purchased, or complete when sold and the proceeds are paid over to the donee?

  c. Does the test for pecuniary interest in a joint venture mandate an expectation of profits, losses, both, or other factors?

  d. May a person, as a parent, have a pecuniary interest, as a joint venturer, in an appreciable asset, to be purchased by that parent and his spouse and raised in the family business, and given to his 8 year old minor child?

2. The trial court erred in granting summary judgment where there was a material issue of fact.

  a. The nature of the family ranching and farming operation which was en-

joyed by William and Connie Steinle was a question of fact for the jury.

Although the Popejoys raise multiple issues on appeal, the first of two issues presented by the Estate is clearly stated and dispositive in this instance:

I. The trial court did not err in granting summary judgment and finding that the requisite elements of a joint venture did not exist.

We affirm the trial court's order granting summary judgment.

### FACTS

On the morning of May 8, 1986, Connie Steinle, accompanied by her seven-year-old daughter and a niece, left the family ranch for Douglas, Wyoming. The purpose of the trip was to purchase a calf for the daughter to raise on the ranch. While en route to Douglas, the truck Connie was driving collided with a vehicle driven by Ronald Popejoy. Connie died as a result of the accident and Ronald sustained injuries initially diagnosed as a muscle strain. As a result of his injuries, Ronald received outpatient medical treatment at a local hospital. One week after the accident William Steinle completed the calf purchase for his daughter. The calf was raised on the Steinle ranch and sold the following year. The daughter received the proceeds from the sale.

Approximately fifteen months after the accident Ronald Popejoy began experiencing severe pain in his neck and back. Because other treatments failed to correct the problem, he underwent two separate neurosurgeries to fuse cervical vertebrae. Following the second surgical procedure, Ronald attempted unsuccessfully to reopen Connie Steinle's estate which had been probated and closed more than a year earlier. The Popejoys then filed a creditor's claim against William's estate as he had died in the interim following Connie's death. After the Popejoys' creditor's claim was rejected, they filed a complaint against the personal representatives of William's estate. The complaint was premised on the theory that William and Connie Steinle were engaged in a joint venture when Con-

nie embarked on her May 8, 1986 "business trip" to pick up the daughter's calf.

After answering the complaint, the Estate filed a motion for summary judgment. The motion, supported by the affidavits of three Steinle family members, was heard by the trial court and subsequently denied. In his decision letter denying summary judgment, the trial court judge stated in part:

There is in my mind a geuine [sic] issue of material fact as to the financial and business structure of the Steinle Ranch operation.

Following denial, the Estate moved to bifurcate the trial so that the issue of whether a joint venture relationship existed could be decided initially and separately from questions of negligence, liability and injury. The motion to bifurcate was granted and a trial date was set.

The Estate then filed a second motion for summary judgment accompanied by additional supporting documents. This motion was heard and granted by the trial court on June 6, 1990. In its decision letter, the trial court stated:

It is the decision of the Court that there is not a genuine issue of material fact to present to a jury in this case and I will award summary judgment to the Defendants.

It has been the hope of the Court that since the date of the last argument on Defendant's Motion For Summary Judgment, that discovery would reveal facts which could be determined as genuine issues involving the relationship between the Defendant, his wife and children.

In a careful reading of the depositions and affidavits, it appears that there was not a financial[,] pecuniary or other interest which would result in a contingent liability upon the Defendant and present a genuine issue of material fact for presentation to a jury.

Following the Popejoys' Motion for Reconsideration and a subsequent hearing, the trial court reaffirmed its decision to grant summary judgment as a matter of

law and because it found no genuine issues of material fact. This appeal followed.

## STANDARD OF REVIEW IN SUMMARY JUDGMENT

This court's standard of review of a trial court's order granting summary judgment is:

We review a summary judgment in the same light as the district court, using the same materials and following the same standards. Summary judgment is proper only when there are no genuine issues of material fact and the prevailing party is entitled to judgment as a matter of law.

*Zmijewski v. Wright,* 809 P.2d 280, 282 (Wyo.1991) (citations omitted).

■ A fact is "material" if proof of that fact would have the effect of establishing or refuting one of the essential elements of a claim or defense asserted by the parties. *S.C. Ryan, Inc. v. Lowe,* 753 P.2d 580, 583 (Wyo.1988). Although summary judgments are not favored in negligence actions, the entry of summary judgment is proper where the record fails to establish an issue of material fact and the moving party is entitled to judgment as a matter of law. *MacKrell v. Bell H₂S Safety,* 795 P.2d 776, 779 (Wyo.1990) (citing *Conway v. Guernsey Cable TV,* 713 P.2d 786, 788 (Wyo.1986)).

In discussing the parties' burdens in the summary judgment context we have also said:

A motion for summary judgment places an initial burden on the movant to make a prima facie showing that no genuine issue of material fact exists and that summary judgment should be granted as a matter of law. Rule 56(c), Wyoming Rules of Civil Procedure. Once a prima facie showing is made, the burden shifts to the party opposing the motion to present specific facts showing that a genuine issue of material fact does exist. We analyze challenges to a grant of summary judgment by reviewing the record in a light most favorable to the party opposing the motion giving him all favorable inferences that can be drawn from the facts. Conclusory statements or mere opinions are insufficient, however, to satisfy an opposing party's burden.

*TZ Land & Cattle Co. v. Condict,* 795 P.2d 1204, 1208 (Wyo.1990) (quoting *Boehm v. Cody Country Chamber of Commerce,* 748 P.2d 704, 710 (Wyo.1987)) (citations omitted).

Finally, this court has said "if the trial court's judgment is sustainable on any theory, it will not be disturbed on appeal." *DeWald v. State,* 719 P.2d 643, 650–51 (Wyo.1986) (citing *ABC Builders, Inc. v. Phillips,* 632 P.2d 925, 935 (Wyo.1981)).

## DISCUSSION

■ The Popejoys seek to impute Connie Steinle's alleged negligence to her husband William's estate by claiming that the Steinles were engaged in a joint venture relationship at the time of the accident. "The burden of establishing the existence of a joint venture is upon the party asserting that the relationship exists." *Stone v. First Wyoming Bank N.A., Lusk,* 625 F.2d 332, 341, n. 12 (10th Cir.1980). *See also Madrid v. Norton,* 596 P.2d 1108, 1119 (Wyo.1979). Consequently, the Popejoys are required to demonstrate each of the elements of a joint venture relationship in order to prevail. They must also show that the joint venture relationship existed at the time of Connie's alleged negligent conduct. *Edler v. Rogers,* 817 P.2d 886, 887 (Wyo. 1991).

■ This court has never set forth a specific "test" of elements necessary to prove existence of a joint venture. The parties in this case and many courts from other jurisdictions frequently use the terms "joint venture" and "joint enterprise" interchangeably and the two terms are conceptually closely related. It has been stated that "[t]he term joint enterprise is often used interchangeably with joint venture, and it has been stated that when the term joint enterprise is used to describe a business or commercial undertaking, no significant differences between the terms may be drawn." 48A C.J.S. *Joint Ventures* § 3 at 395 (1981).

In *Endresen v. Allen,* 574 P.2d 1219, 1226 (Wyo.1978), this court discussed the distinction between a joint venture and a joint enterprise and we adopted a four-part test for proving the existence of a joint enterprise:

> The element of common enterprise, or as it is often termed, joint enterprise, is of material importance in this case. It is said in 46 Am.Jur.2d, Joint Ventures § 5, p. 26 that joint enterprises are to be distinguished from joint ventures "in that the former is an undertaking for the mutual benefit or pleasure of the parties, while the latter is limited to business enterprises." * * * It has been said that the necessary elements [of a joint enterprise] are (1) an agreement, express or implied; (2) a common purpose; (3) community of pecuniary interest; and (4) an equal right to a voice in control and direction of the enterprise.

This court has elaborated on the nature of joint ventures:

> Joint adventures, commonly referred to as joint ventures, are a species of and are governed by the law of partnerships.
>
> * * * * * *
>
> The Uniform Partnership Act * * * defines a partnership as "an association of two or more persons to carry on as co-owners a *business for profit.*" This section has been interpreted as requiring the parties to agree to share in some way in the profits and losses of the business venture. It is the generally accepted rule that a partnership or joint adventure cannot be inferred when the understanding with reference to the undertaking does not contemplate a mutual promise to share, in the fashion agreed upon, in the profits derived from the venture and the losses sustained in its operation.

*True v. Hi–Plains Elevator Machinery, Inc.,* 577 P.2d 991, 996–97 (Wyo.1978) (citations and footnote omitted) (emphasis added). *See also P & M Cattle Co. v. Holler,* 559 P.2d 1019 (Wyo.1977).

Finally, in *Holliday v. Bannister,* 741 P.2d 89, 93 n. 1 (Wyo.1987), this court suggested that the statement of the elements of a joint enterprise set forth in *Endresen* appeared to be a "chopped version" of the elements as stated by the Restatement (Second) of Torts § 491 comment c at 548 (1965). Although the Restatement does not define elements of a joint venture, it does define the four elements of a joint enterprise as:

> (1) an agreement, express or implied, among the members of the group; (2) a common purpose to be carried out by the group; (3) a community of pecuniary interest in that purpose, among the members; and (4) an equal right to a voice in the direction of the enterprise, which gives an equal right of control.

*Id.*

In *Holliday,* we considered among several issues a claim that a father and son were engaged in a joint enterprise while together on a hunting trip. The plaintiff in *Holliday,* as personal representative for the estate of a hunter accidently shot and killed by the son, asserted that the father was vicariously liable for his son's negligence.

In Part II of the *Holliday* opinion and the cases and authorities cited therein, we emphasized the commercial and profit motive aspects of the "community of pecuniary interest" element of a joint enterprise or joint venture relationship. For example, in citing *Easter v. McNabb,* 97 Idaho 180, 541 P.2d 604 (1975), this court said:

> [T]he Idaho Supreme Court concluded that, by limiting the doctrine of joint enterprise to those having a business or pecuniary purpose, it avoided the imposition of a basically commercial concept, derived from the law of partnership and principles of agency, to non-commercial situations which are more often matters of friendly or family cooperation and accommodation.

*Holliday,* 741 P.2d at 94. *See also Hall v. Blackham,* 18 Utah 2d 164, 417 P.2d 664, 666 (1966); *Edlebeck v. Hooten,* 20 Wis.2d 83, 121 N.W.2d 240, 244 (1963). We then concluded by stating:

> We are convinced by the foregoing line of authority that the pecuniary, commercial and business aspects of a joint enterprise are the missing elements necessary to create vicarious liability in the appel-

lee. * * * There was absent the contract, a profit motive and equal right of control found in and required by the business relationship of a joint enterprise. Any attempt to warp such a relationship to fit a social event would be unbecoming of the law.

*Holliday*, 741 P.2d at 94 (footnote omitted). Thus, in affirming summary judgment for the defendant father in *Holliday*, this court concluded that in addition to other elements of a joint enterprise the hunting trip lacked the requisite element of business, commercial or profit motive and, therefore, summary judgment was proper. *Holliday*, 741 P.2d at 94; *see also Palmeno v. Cashen*, 627 P.2d 163, 166–67 (Wyo. 1981) ("[I]n order for a specific venture to be categorized legalistically as a joint enterprise, it must have been made pursuant to a search for material gain."); *Robinson Transportation Company v. Hawkeye–Security Insurance Company*, 385 P.2d 203, 205 (Wyo.1963); *Binning v. Miller*, 55 Wyo. 478, 102 P.2d 64, 71 (1940) (the parties in a joint venture ordinarily contemplate an enterprise for commercial profit); *Dunn v. Hemberger*, 230 Neb. 171, 430 N.W.2d 516, 523 (1988) ("The absence of mutual interest in the profits or benefits is conclusive that a partnership or joint venture does not exist."); 12 Am.Jur. Proof of Facts 2d, *Joint Venture* § 2—Elements of a joint venture, 12–295 at 308 (1977) (another factor in determining whether a joint venture exists is an expectation of commercial profit on the part of the venturers at the time they formed their relationship); 46 Am.Jur.2d *Joint Ventures*, § 13 at 34 (1969) ("An agreement, express or implied, for the sharing of profits is essential to the creation of a joint venture * * *.").

■ The Popejoys' claim in this case is premised on a theory of joint venture and the contention that William and Connie Steinle were engaged in securing an appreciable business asset for their family business at the time of the accident. In the type of business activity being alleged by the Popejoys, there are no significant differences between a joint venture and a joint enterprise. Thus, in determining the existence or nonexistence of a joint venture relationship in this case, we apply the same four-pronged joint enterprise test in *Holliday*, 741 P.2d at 93.

In support of its second motion for summary judgment, the Estate submitted several affidavits, depositions and other materials. The Steinle daughter who was accompanying her mother at the time of the accident and who was the intended recipient of the calf they were on their way to buy submitted an affidavit stating that her father did not ordinarily have any ownership interest in the cattle that she, her sisters and mother raised and owned. She also stated that she, her mother and sisters were primarily responsible for caring for the "pets" and other domestic animals raised on the ranch.

Carl Steinle, William's brother and one of two personal representatives of the Estate, submitted an affidavit indicating that Connie and the Steinle daughters regularly kept numerous farm animals as their own and that William would not have had any interest in the calf that was to be purchased. Further, he stated that the purpose of the trip was to purchase a calf for the daughter to raise as her own. A second Steinle daughter also submitted an affidavit confirming the purpose of the trip.

Other materials submitted with the motion supplemented the affidavits described above and included the affidavit and deposition of Roger Wesnitzer, a certified public accountant. After reviewing Steinle tax records, ranch journal books, bank records, livestock sales receipts and the other affidavits and depositions, Wesnitzer stated that other livestock raised by the Steinle daughters in the past had been given directly to the children by the parents. Further, he stated that while William Steinle bore the costs of raising such livestock on his ranch, sale proceeds went directly to the children. Similar "nonranch" cattle owned by the Steinle daughters in the past had been separately identified by brands owned by the daughters and sale proceeds had gone directly to the children. He stated that William and Connie did not share in any portion of livestock sale proceeds of their daughters' cattle. He concluded that

it was his professional opinion that the trip in which Connie was killed and Ronald was injured did not involve a joint venture between William and Connie Steinle.

Though Wesnitzer did not offer his opinion as to the specific intention of the parties in attempting to purchase the particular calf on the day of the accident (the same calf which was eventually purchased by William for his daughter a week after the accident), evidence exists that the calf in question would have been purchased, branded, raised and sold in identical fashion to other similar "nonranch" livestock. In other words, the calf that Connie was on her way to purchase at the time of the accident would have been paid for by the parents; it would have been branded with a brand registered and owned by one of the daughter's older sisters; it would have been raised with other livestock on the family ranch; and any profits from the eventual sale of the animal would have gone directly to the daughter. Neither side submitted any evidence or argument to the contrary.

Taken as a whole, this evidence satisfied the threshold requirement of establishing the nonexistence of any genuine issue of material fact as to whether William and Connie Steinle were engaged in a joint venture at the time of Connie's accident. "The burden then shifts to the party opposing the motion for summary judgment to present specific facts showing the existence of a genuine issue of material fact." *In the Matter of the Estate of Zona R. Loomis*, 810 P.2d 126, 128 (Wyo.1991). Thus, we examine the affidavits, deposition excerpts and other materials submitted by the Popejoys in opposition to the motion for summary judgment to determine whether the evidence supports existence of the requisite elements of the joint venture test.

In attempting to demonstrate existence of a joint venture relationship, the Popejoys relied extensively on the affidavits provided by Ted Grooms, a certified public accountant. Grooms stated in his first affidavit that William and Connie Steinle did not separate their income and expenses with respect to their ranching activities and

that Connie did much of the work around the ranch because of William's poor health. In his second affidavit, Grooms maintained that after reviewing all the depositions, affidavits, business and tax records submitted by the Steinles for the years 1982–1986 he was convinced that William and Connie were involved in a joint venture at the time of Connie's trip on May 8, 1986. Grooms stated that William's eventual purchase of the calf for his daughter a week after the accident, his efforts in raising and selling the calf, and the fact that the calf bore the brand of the daughter's older sister led him to the conclusion that a joint venture relationship existed between Connie and William. Finally, and significantly, he stated that it was his understanding that only a pecuniary interest and not an interest in profit was needed to show existence of a joint venture.

Noticeably missing from Grooms' testimony is any evidence that proceeds from the sale of the calf that Connie and the daughter were on their way to purchase on May 8, 1986, would not have gone solely to the daughter. Along the same lines, he found no evidence that proceeds from the actual sale of the calf that was eventually purchased for the daughter following the accident went to anyone other than the daughter. Thus, it appears that only the daughter had an actual pecuniary or financial interest in the profits of the sale of the calf that was to be purchased at the time of the accident.

The record in this case shows that Connie's trip to Douglas to purchase a calf for the couple's seven-year-old daughter was a family undertaking. Assuming, *arguendo*, that William agreed with his wife to share in the expense of purchasing and raising the calf in question, this only demonstrates that, at most, the couple may have had an agreement with a common purpose and that they shared a substantially equal right of control in decision making (the first, second and fourth elements of the four-part *Holliday* "test" for joint enterprise).

That William may ultimately have shared in some or all of the expenses of purchasing and raising his daughter's calf does not

mandate existence of a joint venture. "The mere sharing of incidental expenses * * * does not, however, constitute the business purpose essential to a joint venture * * *." *Galliher v. Holloway,* 130 Ill.App.3d 628, 85 Ill.Dec. 837, 474 N.E.2d 797, 802 (1985). Also, the materials submitted by the Estate with its second motion for summary judgment support the conclusion that it was the intent of both parents to brand the calf with an older sister's brand rather than the brand used for regular ranch livestock. The calf was to be accounted for separately from other cattle on the ranch and the daughter was to receive the full benefit of the proceeds from the eventual sale of the calf. This contention is strengthened by unrefuted evidence that William and Connie Steinle had helped purchase, raise and sell calves for their offspring under identical circumstances in the past. It is further strengthened by the manner in which the surviving family members handled the calf when the purchase was actually completed a week after Connie's accident.

Thus, though three of the four essential elements of a joint venture may have been present at the time of the accident, the record in this case does not demonstrate that William and Connie Steinle shared the requisite financial, pecuniary or profit motive interest in this particular calf. The Popejoys failed to refute evidence that the parents intended for the calf to belong to the daughter and that although the daughter would raise the calf on the family ranch, it would still be her own and she would enjoy all proceeds from the eventual sale of the calf. This example of parental nurturing, familial accommodation and generosity does not justify imputing negligence from one parent to the other.

Regardless of whether or not William and Connie were engaged in a joint venture in the course of their other ranching activities, Connie's trip to purchase a calf for their daughter was a separate, distinguishable event and not a part of the general course of the commercial ranching business in which William and Connie were otherwise associated. We recognize the possibility that in other aspects of their ranch operation William and Connie Steinle may have been joint venturers. Under circumstances not present in this case, vicarious liability might attach to a non-negligent spouse engaged in a family-owned business venture.

In the present case, however, there was no evidence presented at the summary judgment stage to show that William and Connie were engaged in a joint venture at the time of the accident. The events and circumstances preceding Connie's accident dictate that the relationship between the parents involved only the common purpose of child rearing and teaching the responsibility of caring for livestock.

The Popejoys argue that because this case involved a question of negligence it was improper for the trial court to grant summary judgment as a matter of law rather than send the case to a jury. In *Holliday,* this court affirmed a trial court's order granting summary judgment upon the dual finding that no genuine issue of material fact existed and that a joint enterprise relationship did not exist as between a father and son together on a hunting trip. *See also MacKrell,* 795 P.2d at 779. While the question is generally left to the fact finder to determine existence of a joint venture, such is not always the case. *Cf. Madrid,* 596 P.2d at 1119. When a plaintiff is unable to show any evidence of a necessary element to prove the case on which his claim is based, it is appropriate for the trial court to recognize the plaintiff's failings in making his case and thus to grant summary judgment to the defendant/party moving for summary judgment. In *Vipont Mining Co. v. Uranium Research and Development Co.,* 376 P.2d 868, 870 (Wyo.1962), we held that the purpose of summary judgment under W.R.C.P. 56, is to allow the trial court to separate what is formal or pretended in a denial or averment from that which is genuine or substantial and that only the latter may subject the litigants to the burden of trial.

## CONCLUSION

In *Holliday,* this court adopted and applied a narrow definition of joint enterprise.

*See, e.g.,* W. Keeton, *Prosser and Keaton on the Law of Torts* § 72 (5th ed. 1984). By limiting the application of the doctrine to a venture having a distinct business or pecuniary purpose, we avoid the imposition of a basically commercial concept upon relationships not having this characteristic. *Shoemaker v. Estate of Whistler,* 513 S.W.2d 10, 17 (Tex.1974). With our decision in this case, we reaffirm our holding in *Holliday* and continue to restrict application of the joint venture/joint enterprise doctrine in Wyoming.

After a careful review of the record, we hold that the Popejoys failed to demonstrate the existence of a genuine issue of material fact which would preclude summary judgment as a matter of law. William and Connie Steinle were not engaged in a joint venture when Connie attempted to drive to Douglas to purchase the calf for their daughter.

The decision of the trial court is affirmed.