**SHERIDAN COMMERCIAL PARK, INC., a Wyoming corporation, Appellant (Defendant),**

v.

**Almira L. BRIGGS, Personal Representative of the Estate of William W. Briggs, a/k/a William Walter Briggs, a/k/a W.W. Briggs, deceased, Appellee (Plaintiff).**

**No. 92–139.**

Supreme Court of Wyoming.

March 12, 1993.

Bruce P. Badley, Badley & Rasmussen, P.C., Sheridan, Moses Garcia, Legal Intern, Sheridan, for appellant.

John F. Araas, Yonkee & Toner, Sheridan, for appellee.

Russell M. Blood, Brown & Drew, Casper, for amicus curiae Wyoming Ass'n of Realtors, Inc.

Before MACY, C.J., and THOMAS, CARDINE, URBIGKIT * and GOLDEN, JJ.

* Retired January 1, 1993.

GOLDEN, Justice.

Appellant Sheridan Commercial Park, Inc. (Sheridan), appeals the district court's grant of summary judgment to William W. Briggs (Briggs) in an action for replevin of property retained by Sheridan, attorney's fees, costs and punitive damages. We affirm the summary judgment concerning replevin and reverse the award of attorney's fees, costs and punitive damages.

## ISSUES

Sheridan presents the following issues on appeal:

I. The district court erred in assessing attorney fees and punitive damages because the case at hand involves no statutory or contractual provision authorizing attorney fees, and the legal question brought before the district court is based on good faith.

II. Wyo.Stat. § 29-7-101 gives appellant a statutory lien for rent and storage services which takes priority over a previous perfected security interest.

III. The district court erred when it failed to award appellant compensation for storage services contravening this court's decision in *Minnehoma.*

Briggs frames the issues this way:

I. The appellee Briggs was entitled to summary judgment against the appellant Sheridan Commercial Park, Inc. on his claim of conversion because there was no genuine issue of material fact regarding the essential elements of the claim, which elements were established as a matter of law.

II. Wyo.Stat. Secs. 29-7-101 through -106 do not entitle the appellant, as a landlord, to a lien for past rent due on the personal property of its tenant, or that of a third party, located on the rented premises.

III. The district court properly granted summary judgment to the appellee Briggs and against the appellant Sheridan Commercial Park, Inc. on the claim

for attorney's fees and punitive damages because the basis for each of such awards were established as a matter of law, without proper evidence or defense presented by the appellant.

IV. The district court acted properly in not awarding compensation to the appellant for storage services.

V. The district court did not commit error in failing to grant the appellant Sheridan Commercial Park, Inc. unpaid back rent in the amount of $2,218.48.

VI. There was no reasonable cause for the filing of the appeal by the appellant, and therefore the appellant should be taxed with a reasonable fee and reasonable damages pursuant to WRAP 10.05.

## FACTS

On June 19, 1986, appellee Briggs[1] entered into a written loan agreement with Arthur J. and Candance E. Bougie (the Bougies) loaning them $12,000 to begin a business known as the Transmission Doctor. The Bougies signed a promissory note and the loan was secured by a security interest in personal property of the Bougies. Briggs also agreed in writing to lease to the Bougies $13,000 worth of equipment, tools, merchandise and other inventory for their venture. Briggs perfected his security interest in the Bougies' personal property by filing the security agreement and financing statement with the clerk of Sheridan County on June 20, 1986, and a financing statement with the Secretary of State on June 26, 1986. A continuation statement was filed by Briggs on April 22, 1991, giving him a continued perfected interest in property of the Bougies.

The Bougies opened the Transmission Doctor at 1621 Commercial Lane in Sheridan, leasing that property from Sheridan, a Wyoming corporation. In September, 1991, the Bougies defaulted on their payments to Briggs and closed their doors. Briggs demanded that both the equipment he leased to the Bougies and the Bougies'

---

1. Mr. Briggs died on September 9, 1992. On October 20, 1992, this court granted a motion to substitute Almira L. Briggs, personal representa-tive of the estate of William W. Briggs as the party appellee in this action.

**814**

property that was the subject of the security agreement be returned to him. Sheridan, by letter dated October 3, 1991, refused to return the property to Briggs until $2,218.48 for past rent due on 1621 Commercial Lane was paid by Briggs, plus $731.52 for clean up and repair of the premises. On October 18, 1991, Briggs filed a complaint in county court alleging Sheridan converted the property to its own use and asking for reasonable value of the property plus interest; return of any of the property; punitive damages; attorney's fees and costs and a writ of replevin, under Wyo.Stat. § 1–15–301 through 306 (1988). On October 24, 1991, Sheridan moved for a change of jurisdiction to the district court noting that the amount involved exceeded the statutory limit of the county court. Sheridan claimed Briggs was a joint venturer and silent partner with the Bougies and that a landlord's lien for delinquent rent was due Sheridan by statute. *See* Wyo.Stat. § 29–7–101 through 29–7–106 (1981). Sheridan argued that its landlord's lien would have priority over Briggs' perfected security interest under Wyo.Stat. § 29–7–106. The action was transferred to district court on November 7, 1991.

On November 15, 1991, Sheridan filed a counterclaim and answer in district court claiming Briggs to be a joint venturer and co-owner of the Bougies' business by virtue of the manner of payment recited in Briggs' agreements with the Bougies. Specifically, Briggs was to receive ten percent of the business's prior month's gross income, ⅖ths to be applied towards rental payments under the lease agreement and ⅗ths towards the loan agreement. Sheridan noted that neither the lease agreement nor the security agreement securing the loan contained an interest rate to be paid by the Bougies. Sheridan claimed priority over Briggs' perfected security interest for non-payment of rent amounting to $6,450 at $500 per month from August 1991 through May 1992, plus attorney's fees of $3,000.

On December 20, 1991, Sheridan filed a motion for summary judgment seeking to deny Briggs' motion for writ of replevin and granting Sheridan a lien for rent and personal property. The district court granted Briggs' writ of replevin on January 8, 1992 finding:

1) the Bougies were in default of the lease agreement and Briggs was entitled to the property he leased to them;

2) the Bougies were in default of the security agreement and financing statement and;

3) the property was wrongfully detained by Sheridan.

Sheridan sought review by this court on writ of certiorari which was denied on January 27, 1992, and Briggs filed a motion for summary judgment the following day.

On March 2, 1992, the district court granted summary judgment in favor of Briggs' finding: 1) Sheridan wrongfully and unlawfully converted to its use, property owned by Briggs and property to which Briggs had a valid perfected security interest; 2) Wyo.Stat. § 29–7–101 *et seq.*, does not provide for a lien against personal property for rent due; 3) at no time did Sheridan assert right to a "storage lien" against the property; 4) Sheridan's actions were willful and wanton misconduct entitling Briggs to punitive damages and; 5) Sheridan's actions were oppressive, willful detention of property, entitling Briggs to reasonable attorney's fees and costs.

On May 26, 1992, the district court's order and judgment awarded Briggs $8,510.73 in reasonable attorney's fees and costs and $750 in punitive damages. Sheridan appealed to this court on June 8, 1992, and the district court stayed the execution of the order and judgment pending the outcome of this appeal. The Wyoming Association of Realtors, Inc., filed an *amicus curiae* brief on behalf of Sheridan.

## DISCUSSION

We begin by noting our often repeated standard of review for summary judgment:

Summary judgment is proper only when there are no genuine issues of material fact and the prevailing party is entitled to judgment as a matter of law.

*Powder River Oil v. Powder River Petroleum*, 830 P.2d 403, 406 (Wyo.1992) (quoting *McDonald v. Mobil Coal Producing, Inc.*, 789 P.2d 866, 869 (Wyo.1990)).

### I. Landlord's lien for "rent services"

A lien may be created only by statute or contract and the courts may not choose to recognize a lien absent its creation through one of these enumerated ways. *Libertyville Township v. Woodbury*, 121 Ill.App.3d 587, 77 Ill.Dec. 207, 212, 460 N.E.2d 66, 71 (1984); *Kozlowski v. Briggs Leasing Corp.*, 96 Misc.2d 337, 408 N.Y.S.2d 1001, 1005 (1978); *Ridge Community Investors, Inc. v. Berry*, 293 N.C. 688, 239 S.E.2d 566, 572 (1977). *See* 51 Am. Jur.2d *Liens* § 6 (1979 & Supp.1989). Thus, a landlord may not claim a lien against the property of its tenant for back rent due without agreement by contract or recognition by statute. *Hayes v. Harris*, 479 N.E.2d 1359, 1361 (Ind.App. 4 Dist. 1985); *State Bank of Loretto v. Dixon*, 214 Minn. 39, 7 N.W.2d 351, 354 (1943); *See* 49 Am.Jur.2d *Landlord and Tenant* § 675 (1970 & Supp.1989); Janet Fairchild, Annotation, *Application of Statutory Landlord's Lien to Property of Third Person Used by Tenant on Rented Premises*, 95 A.L.R.3d 1205 § 2 (1979).

Sheridan's claim to a lien against Briggs for back rent due relies on a claim of statutory entitlement under the following statute:

(a) any person is entitled to a lien on any goods, chattels or animals for his reasonable charges for work or services performed or feed provided when he:

(i) Makes, alters, repairs, bestows work upon, transports, stores or keeps the same.

WYO.STAT. § 29–7–101(a)(1981). Sheridan follows this argument by noting that such a lien would have priority over Briggs' perfected security interest under the following statute:

(a) A lien pursuant to W.S. 29–7–101 through 29–7–106 except as otherwise specifically provided therein shall be prior to all other liens, encumbrances and security interests if the property claimed is in possession of the lien claimant.

WYO.STAT. § 29–7–106(a)(1981).

Our well-developed guidelines in this area inform us that statutory interpretation is an effort to "arrive at the correct interpretation" and is viewed by this court as an "inquiry respecting the ordinary and obvious meaning of the words employed according to their arrangement and connection." *Parker Land and Cattle Co. v. Wyoming Game and Fish Commission*, 845 P.2d 1040, 1042 (Wyo.1993) (quoting *Rasmussen v. Baker*, 7 Wyo. 117, 133, 50 P. 819, 823 (1897)). On this subject we have very recently said that:

> We read the text of the statute and pay attention to its internal structure and the functional relation between the parts and the whole. We make the determination as to meaning, that is, whether the statute's meaning is subject to varying interpretations. If we determine that the meaning is not subject to varying interpretations, that may end the exercise * * *.

*Parker*, at 1045.

As a matter of law, the court is to determine whether an ambiguity exists in a statute. A statute is "unambiguous if its wording is such that reasonable persons are able to agree as to its meaning with consistence and predictability." *Parker*, at 1043 (citing *Allied–Signal, Inc. v. Wyoming State Bd. of Equalization*, 813 P.2d 214, 220 (Wyo.1991)). We note particularly that "[l]ien statutes create remedies in derogation of common law and must be strictly construed." *Burg v. Ruby Drilling Co.*, 783 P.2d 144, 152 (Wyo.1989) (citing *Cities Serv. Oil Co. v. Pubco Petroleum Corp.*, 497 P.2d 1368, 1371–72 (Wyo.1972)). We will not extend the scope of statutory lien laws. *American Buildings Co. v. Wheelers Stores*, 585 P.2d 845, 847 (Wyo.1978).

With these rules in mind, we review Sheridan's primary argument that renting a building is the same as providing a service under the statute, creating something called "rent services." Though Sheridan cites the work of authors in business and marketing fields for support of this propo-

sition, what matters here is the correct interpretation of the statute. Nowhere in WYO.STAT. § 29–7–101(a) is rent mentioned, though we note in other areas that the legislature has included the ability to impose a lien for rent when it chose to do so. For example, WYO.STAT. § 29–7–301 (1981) considers a lien for rent, stating in pertinent part:

(a) Any person leasing or renting space for a house trailer site shall have a lien on any house trailer thereon situated for unpaid lease or rental payments and for other unpaid charges due the lessor under the terms or conditions of any lease or rental agreement.

Applying a strict construction to § 29–7–101(a), it is clear that rent was not intended to be included under this unambiguous statute. We are certain that had the legislature intended it to be otherwise, the drafting of the statute would more closely resemble § 29–7–301, which specifically provides for a lien for back rent due.

The most recent case implicating § 29–7–101(a) does not support Sheridan's statutory interpretation. We find Sheridan's reliance to be misplaced regarding *Minnehoma Fin. Co. v. Pauli*, 565 P.2d 835 (Wyo. 1977). In that case, the Guests, who purchased a mobile home, subject to a security interest by Minnehoma Financial Company, vacated the home leaving it on a rented trailer space belonging to Pauli, who then moved the trailer to an adjacent area and stored it. Pauli claimed a valid storage lien under WYO.STAT. § 29–115 (1957) (1967 Wyo.Sess.Laws, ch. 89, § 1) the predecessor to WYO.STAT. § 29–7–101(a). Under § 29–115, the "owner or person in possession" was required to request the "labor, services, material or feed" before a lien could arise. This court held Pauli had a valid lien arising through "an implied request to store" when "the owner of goods abandons such goods on the property of another." *Minnehoma*, 565 P.2d at 840.

The facts before us are easily distinguished from *Minnehoma*. There, Pauli sought a lien for storage, clearly provided under § 29–115 and § 29–7–101(a), not for back rent due or "rent services." Briggs

made no request, implied or otherwise, to have the goods stored; instead, he tried unsuccessfully to have Sheridan return them. Abandonment was not actuated by Briggs, but by the Bougies.

Sheridan attempts to shore up this claim for a landlord's lien for back rent due with the allegation that Briggs was a joint venturer and partner with the Bougies. Specifically, Sheridan takes issue with the manner in which Briggs was to receive payment under the agreements, collecting ten percent of the business's prior month's gross income, absent any interest charges to the Bougies.

"The burden of establishing the existence of a joint venture is upon the party asserting that the relationship exists." *Popejoy v. Steinle*, 820 P.2d 545, 548 (Wyo. 1991) (quoting *Stone v. First Wyoming Bank N.A., Lusk*, 625 F.2d 332, 341, n. 12 (10th Cir.1980)). Sheridan must "demonstrate each of the elements of a joint venture relationship in order to prevail." *Popejoy*, at 545. We have explained the nature of joint ventures in this way:

Joint adventures, commonly referred to as joint ventures, are a species of and are governed by the law of partnerships. * * * *

The Uniform Partnership Act * * * defines a partnership as "an association of two or more persons to carry on as co-owners a *business for profit.*" This section has been interpreted as requiring the parties to agree to share in some way in the profits and losses of the business venture. It is the generally accepted rule that *a partnership or joint adventure cannot be inferred when the understanding with reference to the undertaking does not contemplate a mutual promise to share*, in the fashion agreed upon, *in the profits* derived from the venture *and the losses* sustained in its operation.

*Popejoy*, at 549 (quoting *True v. Hi–Plains Elevator Machinery, Inc.*, 577 P.2d 991, 996–97 (Wyo.1978)) (emphasis added).

Briggs' agreements with the Bougies were based on sharing a percentage of the profits generated from the business *only*

up to the amounts of the loan and lease and did not include sharing the losses of the business. These are not the characteristics of a joint venture or partnership. Even if Briggs could be deemed a partner we find no statutory support for a lien for "rent services," and Sheridan would need to show that the lease agreement between Sheridan and the Bougies contemplated such a lien. This Sheridan cannot do. The lease agreement between Sheridan and the Bougies did not provide for a landlord's lien for default of rent.

Finding no support in either statute or contract for the imposition of a landlord's lien for "rent services" and, finding as well, that Briggs was not a joint venturer or partner with the Bougies, we must uphold the grant of summary judgment giving Briggs a writ of replevin.

■ In addition to Sheridan's allegation of a right to a "landlord's lien for rent due" Sheridan now also argues entitlement to a storage lien. The district court found that Sheridan had "at no time in this matter validly or properly asserted a storage lien." It is common knowledge that this court will "not consider issues raised for the first time on appeal," and we will not now consider the merits of this claim by Sheridan. *Kemper Architects v. McFall,* 843 P.2d 1178, 1189 (Wyo.1992).

II. Attorney's fees, costs and punitive damages

■ Briggs was awarded $8,500 in attorney's fees and costs and $750 in punitive damages. On the issue of attorney's fees, we have said:

[T]he first principle of award of attorney's fees is that either authentication by contract or provision by statute is required. *Bowers Welding and Hotshot, Inc.,* 699 P.2d 299 [Wyo.1985]; *Alyeska Pipeline Service Co. v. Wilderness Soc.,* 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975). This is the American rule that each party in a lawsuit ordinarily shall bear his own attorney's fees unless there is an express statutory authorization (or contractual provision) to the contrary.

*UNC Teton Exploration Drilling, Inc., v. Peyton,* 774 P.2d 584, 594 (Wyo.1989). *See also, Devous v. Wyoming State Bd. of Medical Examiners,* 845 P.2d 408, 418 (Wyo.1993).

We have upheld recovery of attorney's fees where specified by contract or statute. *Gose v. Hess,* 822 P.2d 846, 848 (Wyo.1991). *See also, Hinckley v. Hinckley,* 812 P.2d 907, 915 (Wyo.1991); *Moncrief v. Harvey,* 816 P.2d 97, 109 (Wyo.1991). We have denied attorney's fees where no "statutory authority nor contractual liability" could be demonstrated. *Bowers Welding and Hotshot, Inc. v. Bromley,* 699 P.2d 299, 307 (Wyo.1985). We have been strict in our interpretation of statutes permitting this type of award. (*See, Devous,* where we disallowed attorney's fees under a statute that only specified costs). In the case at bar, the award of attorney's fees and costs is not supported by either a contract between the parties or the statute in question, § 29–7–101(a).

In an action for replevin, this court has long held that attorney's fees cannot be allowed. *Fin. Corp. of Wyo. v. Commercial Credit Co.,* 41 Wyo. 198, 283 P. 1100, 1105 (Wyo.1930). We have, however, recognized an exception to the general rule denying recovery of attorney's fees and costs in a replevin action where "fraud, malice, oppression or wilful wrong" can be shown. *Olds v. Hosford,* 354 P.2d 947, 950 (Wyo.1960). As we note in our discussion of punitive damages, Sheridan's conduct does not rise to the level of fraud, malice, oppression or wilful wrong and we cannot support an award of attorney's fees on this basis.

Of punitive damages we have said:

Punitive damages are not a favorite of the law and are to be allowed with caution within narrow limits. *Town of Jackson v. Shaw,* Wyo., 569 P.2d 1246 (1977). Since the purpose of punitive damages is not to compensate a plaintiff, but to punish a defendant and deter others, such damages are to be awarded only for conduct involving some element of outrage, similar to that usually found in crime.

RESTATEMENT (SECOND) OF TORTS § 908 Comment b (1979).

*Weaver v. Mitchell*, 715 P.2d 1361, 1369–70 (Wyo.1986). *See*, 22 Am.Jur.2d *Damages* § 733 (1988).

■■■■■■ Whether punitive damages are to be awarded is within the discretion of the trial court, a determination we will not reverse without finding a clear abuse of discretion. *Cates v. Daniels*, 628 P.2d 862, 868 (Wyo.1981). We must ask "whether the court could reasonably conclude as it did" for there is "no right in any party to punitive damages." *Squaw Mountain Cattle Co. v. Bowen*, 804 P.2d 1292, 1298 (Wyo.1991) (quoting *Mader v. Stephenson*, 552 P.2d 1114, 1115 (Wyo.1976)). Outrageous conduct, malice and willful and wanton misconduct have been sufficient to warrant punitive damages. *Squaw Mountain*, 804 P.2d at 1298. However, punitive damages will not lie against "one who acts in good faith under an erroneous sense of duty or against a defendant who acts in good faith and under the advice of counsel." *U.S. Through Farmers Home Admin. v. Redland*, 695 P.2d 1031, 1039 (Wyo.1985). *See also, Knight v. Beckwith Commercial Co.*, 6 Wyo. 500, 46 P. 1094 (1896), exemplary damages excluded where outrage or bad faith could not be found.

■■■■ In awarding punitive damages, the district court found that Sheridan's actions "amounted to willful and wanton misconduct and an oppressive, willful detention of the property against the Plaintiff's ownership rights and right to immediate possession." At a hearing on this issue, the district court stated:

[C]ertainly the plaintiff has been damaged. The plaintiff has had to retain the services of an attorney to contest this, go to the Supreme Court, come back here all over some property * * * the past rent is less than the attorney's fees that have been spent in this thing.

There was never any claim of any lien for storage. This was merely a case in which the defendant asserted possession of the goods for back rent and he had no legal right to do so. And he continued to assert that and continued to assert that.

We note the following cases which recognize that it is difficult to support a claim of outrageous conduct, malice and willful and wanton misconduct. In *Weaver*, we reversed an award of punitive damages where the negligence of a logging truck driver caused injury to the plaintiff, finding that the facts did not support outrageous conduct, malice and willful and wanton misconduct. In *Squaw Mountain*, we affirmed the trial court's decision denying punitive damages where a company president ignored his fiduciary duty to the company's shareholders and appropriated over one million dollars for his own benefit.

"Sometimes the line between conduct justifying punitive damages and less culpable conduct is fine." *Mayflower Restaurant Co. v. Griego*, 741 P.2d 1106, 1116 (Wyo.1987). We hold that the conduct of Sheridan did not cross that fine line, and the district court abused its discretion in finding that it did. The award of punitive damages must be reversed.

## DISPOSITION

Sheridan is not entitled to a landlord's lien for back rent due under either WYO. STAT. § 29–7–101(a) or the lease agreement with the Bougies. The award of attorney's fees and costs is not supported by either statute or contract and Sheridan's conduct in detaining Briggs' property was not so outrageous, malicious, willful or wanton as to justify either these fees or punitive damages. We affirm the grant of summary judgment as it concerns Briggs' action in replevin and reverse the award of attorney's fees, costs and punitive damages.